**SEATRAIN LINES, Inc. v. PENN-SYLVANIA R. CO. et al.**

**No. 10944.**

United States Court of Appeals Third Circuit.

Argued June 16, 1953.

Decided Sept. 10, 1953.

Carl E. Newton and Theodore S. Hope, Jr., New York City (Donovan, Leisure, Newton & Irvine and Edwin L. Meyer, New York City, Jamieson & Walsh and Crawford Jamieson, Trenton, N. J., on the brief), for plaintiff-appellant Seatrain Lines, Inc.

Hugh B. Cox, Washington, D. C. (John B. Prizer, Philadelphia, Pa., Hugh B. Cox, Washington, D. C., Joseph F. Eshelman, Philadelphia, Pa., and Sackett M. Dickinson, Trenton, N. J., for Pennsylvania R. Co.; Charles Cook Howell, Wilmington, N. C., Francis M. Shea and Lawrence J. Latto, Washington, D. C., and U. B. Ellis, Wilmington, N. C., for Atlantic Coast Line R. Co.; Sidney S. Alderman, Henry L. Walker and Francis M. Shea, Washington, D. C., and Waldron M. Ward, Newark, N. J., for Southern Ry. Co.; Hugh B. Cox, Washington, D. C., L. James Huegel, Baltimore, Md., and Emory, Langan & Lamb, Jersey City, N. J., for Baltimore & O. R. Co.; Harold J. Gallagher, New York City, James B. McDonough, Jr., W. R. C. Cocke and Chas. T. Abeles, Norfolk, Va.,

for Seaboard Air Line R. Co.; Minard, Cooper, Gaffey & Webb, Newark, N. J., Willis T. Pierson, Washington, D. C., and Duane E. Minard, Newark, N. J., for defendant-appellee Erie R. Co.; Pitney, Hardin and Ward and Waldron M. Ward, Newark, N. J., J. Carter Fort, Thomas L. Preston, and Gerald D. Finney, Washington, D. C., for appellee, Association of American Railroads; Carey, Schenk & Jardine and Robert Carey, Jr., Newark, N. J., H. T. Lively, Louisville, Ky., and Thomas V. Jardine, Newark, N. J., for defendant-respondent Louisville & N. R. Co., on the brief), for defendants-appellees.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from an order, D. C., 108 F.Supp. 113, dismissing on jurisdictional grounds a complaint of violation of the antitrust laws wherein plaintiff, Seatrain Lines, Inc., alleges that the defendant railroads and associations of railroads have injured it by concerted action in restraint of trade. Seatrain seeks both injunctive relief and damages.

The complaint is lengthy, 36 pages of allegations and 8 pages of prayers, in all 44 printed pages in the record on appeal. However, summation of certain important allegations will suffice to place in context and focus the principal contentions of the parties in the district court and on this appeal.

Seatrain is a common carrier by water operating in interstate commerce under certification and sanction of the Interstate Commerce Commission. The present controversy concerns its business of carrying loaded railway freight cars by specially designed and adapted ships between the ports of New York, New Orleans, Texas City and Savannah. At these terminal points loaded cars are delivered to and removed from the dock by railway. Between shipside tracks and the ship itself direct transfer of freight cars is accomplished by special hoisting equipment.

This combined rail and water carriage is competitive with, and in many cases cheaper than, carriage entirely by rail between the same terminal points. To eliminate this competition defendants have engaged in concerted action calculated to hamper the normal conduct of the Seatrain enterprise. Particularly, it is alleged that the defendants have conspired to exclude Seatrain from participating in a nation-wide arrangement of all the railroads for unrestricted interchange among themselves of freight cars owned by any of them. Also, it is said that defendants have conspired to cause individual railroads to deny Seatrain permission to receive and carry their freight cars. A third group of allegations concerns various expedients such as dissemination of misinformation disparaging Seatrain's service, harassment of Seatrain with protracted litigation maintained in bad faith, and refusal to perform various duties of cooperation incumbent upon the defendants under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., in connection with land-sea routings of freight via Seatrain, all said to have been employed by defendants pursuant to a conspiracy to discourage and prevent shippers from shipping via Seatrain. Seatrain says the continuing conspiracy of defendants to boycott and obstruct its business already has cost it more than fifty million dollars. Accordingly, it seeks in this action to recover treble damages under the Clayton Act, 15 U.S.C.A. § 1 et seq., and to obtain a number of injunctive orders directed against various types of discriminatory and injurious conduct of which it complains.

In determining whether the complaint states a case appropriate for judicial relief we will consider the foregoing principal groups of allegations separately. First, and apparently most important in the contemplation of the parties, are the allegations made and the relief sought with reference to the boycotting of Seatrain in the interchange and use of railroad owned freight cars.

In this major aspect the present lawsuit continues a 20 year controversy between Seatrain and a large part of the railroad industry. In various earlier proceedings before the Interstate Commerce Commission the present parties have contested the issue whether and in what circumstances railroads are required to permit Seatrain to take and transport their freight cars. The railroads have insisted that no railroad is under a duty to permit Seatrain to use and transport its cars. Seatrain has insisted that it is entitled to the same general privilege of unrestricted interchange of cars as exists among the railroads themselves.

Beginning with Investigation of Seatrain Lines, Inc., 1935, 206 I.C.C. 328, the Commission has considered these opposing contentions and has resolved them by taking and adhering to an intermediate position. In the cited proceeding the Commission decided that under the Interstate Commerce Act it could and would require those railroads which choose or by Commission dictate are required to participate with Seatrain in through routes [1] to permit the unrestricted use and transportation of their freight cars by Seatrain as one of the procedures essential to the proper operation of through routing arrangements. But it also decided that Congress had not empowered it to impose any such requirement on railroads which were not in through route relationship with Seatrain. These rulings and the distinction they reflect are set out in plain language:

"We find nothing in the act imposing any duty upon or giving us jurisdiction to require a rail carrier to permit delivery of its cars to a water carrier where through routes between such rail and water carriers do not exist. * * *"

"There is no duty to interchange cars with Seatrain resting on those defendants who are not parties to through routes with it, * * *" 206 I.C.C. at 343

In that proceeding the Commission did not undertake to decide what railroads were or should be participants in through routing arrangements with Seatrain. That problem was considered and appropriate rulings made somewhat later in Seatrain Lines, Inc. v. Akron, Canton & Youngstown Ry., 1938, 226 I.C.C. 7. In that case the Commission again declared the duty of through route participants to permit Seatrain to use their cars. But this still did not settle the matter. For Seatrain soon complained that its service was being hampered by refusals of railroads to make their cars available to it, contrary to the principles and rulings enunciated by the Commission. On Seatrain's motion, the Commission reopened the car service controversy. After hearings the Commission reaffirmed and applied the principles declared in the earlier Investigation of Seatrain Lines and affirmatively ordered those railroads found or required to be in through route relationship with Seatrain to cease and desist from prohibiting the interchange of their cars with Seatrain and to charge Seatrain the same per diem rate as prevailed among the railroads themselves, with other terms and conditions to be negotiated. Hoboken Mfgrs. RR. v. Abilene & So. Ry. Co., 1941, 248 I.C.C. 109.

Dissatisfied with this order, the railroads sought its review in an appropriate proceeding before a statutory three-judge district court in New Jersey. The court sustained the Commission's power and action as to land-sea through routing in interstate commerce, but found that the Commission lacked power to require car exchange where Seatrain moved in foreign commerce. Pennsylvania Ry. Co. v. United States, D.C.1943, 55 F.Supp. 473. The railroads appealed the ruling as to interstate commerce and Seatrain appealed the ruling as to foreign commerce. The Supreme Court held that the Com-

[1] "A 'through route' is an arrangement, express or implied, between connecting [carriers] for the continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another." See Thompson v. United States, 1952, 343 U.S. 549, 556, 72 S.Ct. 978, 982, 96 L.Ed. 1134.

mission had been right as to both interstate and foreign traffic. United States v. Pennsylvania Ry. Co., 1945, 323 U.S. 612, 65 S.Ct. 471, 89 L.Ed. 499. Quite obviously this ruling was limited by the fact that only the obligations among participants in through routing were before the courts. The rights and duties of the non-participants in through routing were not adjudicated or even discussed in the opinions. The parties had not elected to seek judicial review of the Commission rulings on this latter situation.

Such is the essential decisional background of the present new effort of Seatrain to obtain redress for car withholdings by non-participants in through routing on the theory that such withholdings have been caused by a conspiracy in violation of the antitrust laws. It is in the light of these earlier proceedings and decisions that we must consider the decisive ruling of the district court that as a matter of judicial policy no relief should be given with respect to any aspect of car withholdings because this entire matter is within the control and primary jurisdiction of the Interstate Commerce Commission, and that injunctive relief must be withheld for the further reason that Section 16 of the Clayton Act expressly deprives private persons of access to the federal courts for equitable relief against a carrier "in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." 15 U.S.C.A. § 26.

The district court recognized that Seatrain is now complaining about its inability to use cars owned by railroads not in through route relationship with it, and cars of such ownership only. The court further recognized that the Commission has ruled that it has no power to regulate or control car interchange in this situation. However, the district court believed and held that the Commission had been mistaken in its conclusion that it lacked power to require other than through route participants to make their cars available to Seatrain. The district

court based its conclusion on implications of the Supreme Court opinion in United States v. Pennsylvania Ry. Co., supra, and upon its own analytical consideration of various provisions of the Interstate Commerce Act.

We do not decide whether we would agree with the district court if this were an open matter. For, as concerning this lawsuit, we think the question of Commission power over car withholdings by railroads not in through route relationship with Seatrain is foreclosed by the rulings already made by the Commission itself. Normally, if such an issue, albeit concerning the jurisdiction of the tribunal itself, has once been decided between the parties by a competent court, another court will not permit the matter to be relitigated between the same parties in another case. Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Sherrer v. Sherrer, 1948, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429. This rule of repose is doubly justified in the rare case in which the party who won on an issue in the first case attempts to obtain a contrary ruling in the second litigation, as the railroads are trying to do here. Cf. Scarano v. Central Ry. Co. of N. J., 3 Cir., 1953, 203 F.2d 510. The present case does present the additional consideration that the first decision was by the Interstate Commerce Commission, an administrative tribunal, rather than a court. But in the circumstances that should make no difference. There was a contested proceeding before the Commission, with decision depending upon the present issue and the present parties taking opposite sides upon it. *Res judicata* should and does apply. Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Dennison v. Payne, 2 Cir., 1923, 293 F. 333; Ogino v. Black, 1952, 304 N.Y. 872, 109 N.E. 2d 884; cf. Chicago, R. I. & P. Ry. Co. v. Schendel, 1926, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757.

Moreover, through this invocation of *res judicata* we achieve a result in accord with the principles of "pri-

mary jurisdiction" which the Supreme Court has worked out for the better functioning of federal courts and administrative agencies in areas where both have legitimate concern. Here the Commission has considered the matter of car exchange between Seatrain and the railroads, both participants and non-participants in through routing. It has defined the limits of its power and has acted accordingly. Now a charge of conspiracy in restraint of trade in connection with such car exchange brings aspects of this matter within the normal area of judicial concern under the antitrust laws. Whatever restraint the rules of primary jurisdiction may impose upon a court asked to regulate conduct merely of potential concern to an administrative agency, we think that, once the administrative agency has made a decisive ruling defining its interest in the matter, any meaningful judicial recognition of primary administrative jurisdiction must respect the administrative ruling actually made. To disregard that ruling, as defendants urge here, on the basis of judicial opinion that the Commission ought and perhaps will change its position in the future, is not, in our view, a proper application of the primary jurisdiction concept.

■■  Thus guided by what the Commission has decided as to the area of its own concern, rather than what we may think about the soundness of that decision, we turn again to the grievances stated and the relief sought in Seatrain's present complaint. Seatrain itself concedes that its principal and most serious grievance is stated in its complaint of the discriminatory character and unfair operation of the agreement among the railroads to exchange cars freely with each other, but not with Seatrain, and its request for judicial action calculated to modify this discriminatory agreement and to redress the injury which has resulted from it. Here we think the court is asked to infringe the primary jurisdiction of the Commission.

In somewhat greater detail the situation of which Seatrain complains principally is this. The railroads of the United States through the instrumentality of the Association of American Railroads have agreed among themselves that railroad owned freight cars shall be freely interchanged and reciprocally licensed among railroads as the exigencies of traffic may require. It is wholly immaterial whether the car owning railroad has any through route connection with the railroad which has occasion to take and use its equipment. The detail of this free interchange is spelled out in a formalized Car Service and Per Diem Agreement and the entire arrangement is carried out under sanction of the Interstate Commerce Commission.[2] The power of the Commission to regulate and control such car interchange among the railroads themselves is plenary, subject of course to the requirement that its impositions be reasonable. Indeed, Section 1 (14) (a) of the Interstate Commerce Act expressly empowers the Commission to "establish reasonable rules, regulations, and practices with respect to car service by common carrier by railroad subject to this chapter, including the compensation to be paid and other terms of any contract, agreement, or arrangement for the use of any locomotive, car, or other vehicle not owned by the carrier using it (and whether or not owned by another carrier), and the penalties or other sanctions for non-observance of such rules, regulations. or practices." 49 U.S.C.A. § 1(14) (a). In recent years the Commission has exercised its power by conducting an elaborate investigation to determine "whether the rules, regulations, and practices with respect to the use, control, supply, movement, distribution, exchange, interchange and return of railroad freight carrying cars are unreasonable, or otherwise unlawful," with a view

2.  Subsections (10) and (11) of Section 1 of the Interstate Commerce Act impose on the railroads the duty of establishing and observing "just and reasonable rules, regulations, and practices" which will provide "adequate car service", including the "exchange" and "interchange" of cars.  49 U.S.C.A. § 1.

to devising "ways and means of making the best use of the available car supply" and determining "whether the Commission should promulgate car service rules." See Car-Service, Freight Cars, 1947, 268 I.C.C. 687. While this investigation did not reveal any present need for revision of the existing car interchange agreement or for the imposition of overriding rules by the Commission itself, the plenary power of the Commission was and is clear.

This contrasts with the Commission's finding of lack of power, as declared in Investigation of Seatrain Lines, supra, to control car interchange between Seatrain and railroads not in through route relationship with it. However, the railroads themselves have covered this situation in their Car Service Agreement. Car Service Rule 4 provides that "cars of railroad ownership must not be delivered to a steamship, ferry or barge line for water transportation, without permission of the owners, filed with the Car Service Division," and the Commission says it has nothing to do with such defining of the relationship between Seatrain and railroads which do not share through routes with it. In this connection it is noteworthy that Car Service Rule 4 is, on its face, but declaratory of the normal privilege of a private owner, absent any over-riding duty imposed in the public interest, to say, in the exercise of its independent judgment, what shall be done with its own equipment.

In this situation Seatrain now asks the federal courts to decide that the present rule of unrestricted car interchange among the railroads is unlawful unless it shall be so modified and applied as to give Seatrain the same status and privileges as a railroad under it. In other words Seatrain wants the courts to say the railroads may not rightfully do something which the Commission alone is empowered to regulate and control unless they shall in addition do something else which goes beyond the area of Commission concern. Such use of judicial power to condition or require an enlarging modification of an arrangement which is presently effective under Commission jurisdiction and sanction is just such an interference with the administrative prerogative as the doctrine of primary jurisdiction is designed to prevent. See Georgia v. Pennsylvania Ry. Co., 1945, 324 U.S. 439, 460–461, 65 S.Ct. 716, 89 L.Ed. 1051. We hold that the entire effort to have the courts require modification of car exchange agreements to include Seatrain or penalize the railroads for maintaining the present car exchange arrangements which discriminate against Seatrain must fail. Despite the charge that the present situation is the result of a conspiracy against Seatrain the Commission sanctioned agreement may not be altered by the courts or its present limitations dealt with as an actionable wrong.

■ But there is more to the present complaint. Seatrain says that the defendants have conspired to cause individual railroads, which do not share through routes with it, to deny Seatrain permission to use and carry their freight cars. The Commission has plainly ruled that it has no control or authority over such withholdings. And we already have decided that this ruling is *res judicata* here. It follows that whatever relief, whether by injunction or the award of damages, may be appropriate under the antitrust laws in connection with this aspect of the alleged conspiracy can be granted without encroachment upon any area of Commission concern or violation of the prohibition of Section 16 of the Clayton Act against enjoining activity within the regulatory power of the Commission.

Similarly, many of the allegations about activities designed to discourage shippers from shipping via Seatrain are complaints of conduct which can be restrained or made the subject of damages without any presently apparent likelihood of interference with anything that the Commission has done or may wish to do within its jurisdiction. However, there also are allegations that this conspiracy to discourage shippers has involved refusal by those defendants which participate with Seatrain in through routing to perform various acts of co-

operation incumbent upon them under the Interstate Commerce Act. As Seatrain itself has recognized, the Commission can provide a remedy for this kind of misconduct and, therefore, even though the misconduct may flow from a conspiracy in restraint of trade, the courts should leave redress to the Commission. Cf. United States Navigation Co. v. Cunard S.S. Co., 1932, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408. Accordingly, Seatrain stipulated in the district court "to eliminate from its complaint those prayers which relate to relief in respect of through routes, joint rates, divisions, bills of lading, switching, billing credit and loss-and-damage claims," and particularly that "The specific prayers for injunctive relief so abandoned and withdrawn are those contained in the following sub-paragraphs of paragraph 1 of the prayer: (j), (k), (l), (m), (n), (r), (u), (w), and to the extent that they relate to the matters covered by said subparagraphs, but not as they relate to other subparagraphs of paragraph 1, subparagraphs (p), and (q)."

The last part of this stipulation withdrawing, yet not wholly withdrawing, indicated portions of the complaint highlights a difficulty which we experience in considering the various matters involved in the complaint which do not infringe primary administrative jurisdiction. In statement and in embodiment in the structure of the pleading these matters of present judicial cognizance are not clearly separate and distinct from matters relating to the car exchange agreement with which the courts should not interfere. We think it will make for clarity and assured avoidance of encroachment upon Commission jurisdiction for the allegations about conspiracy to influence the individual decisions of railroads on the interchange of their cars to be presented in a complaint that avoids any attack upon or attempt to modify the car service agreement itself. So too, the alleged interference with customers by means beyond Commission control should be divorced from charges of customer interference by means within Commission control. Therefore, we think this case should not proceed upon the admixture of appropriate and inappropriate allegations and prayers which constitutes the present complaint, but rather that the judgment of dismissal should be vacated with leave to the plaintiff within a reasonable time to be fixed by the district court to file an amended complaint which shall contain only such matter as is appropriate under the analysis and conclusions stated in this opinion, and that in case the plaintiff does not file such an amended complaint within the time limited judgment of dismissal should again be entered.

We have not overlooked the more far reaching contention of the defendants that all else in the complaint is so subsidiary to Seatrain's demand for full integration in the car service agreement that the present dismissal should stand without modification. Indeed, in its above cited stipulation for abandonment of certain allegations and prayers Seatrain has stated that its "primary and immediate need is relief in the matter of access to the national freight car pool. It does not wish to have that issue confused or delayed by the interpolation of arguments arising from its prayer for relief as to far less important aspects of the means employed." However, we think that neither this statement nor rather similar statements of counsel during the hearing on the motion to dismiss should preclude Seatrain, if it so desires, from seeking redress for what it has characterized as "far less important matters" in a situation where the court cannot afford what Seatrain regards as its "primary and immediate need". A division of jurisdiction between court and commission in the interest of orderly administration does not minimize the seriousness of conspiracy in restraint of trade and should not deprive a litigant of the privilege of seeking judicial relief for even the "less important" aspects of such conspiracy when the court can consider and act upon them without invading the administrative province.

The judgment of the district court will be vacated and the cause will be remanded for further proceedings not inconsistent with this opinion. There shall be no award of costs in this court.