**UNITED STATES of America, Plaintiff,**

v.

**TOWN OF BOLTON LANDING, NEW YORK; Green Island Associates; Norman Wolgin; Marian Wolgin; and Kennington Properties, Inc., Defendants.**

93–CV–0989.

United States District Court, N.D. New York.

April 1, 1996.

Judge, Duffy Law Firm, Glenns Falls, NY, for defendant Bolton Landing, H. Wayne Judge, of counsel.

Miller, Mannix Law Firm, Glenns Falls, NY, for defendants Green Island Associates, Norman Wolgin, Marian Wolgin, and Kennington Properties, Benjamin R. Pratt, Jr., of counsel.

Bray, Berry Law Firm, Blue Bell, PA, for defendants Green Island Associates, Norman Wolgin, Marian Wolgin, and Kennington Properties, Robert J. Bray, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND & FACTS

### A. Summary Of Present Motion

Plaintiff, the United States of America ("United States"), comes before this court seeking partial summary judgment against the defendants, Town of Bolton Landing ("Bolton Landing"), Green Island Associates ("GIA"), Norman Wolgin, Marian Wolgin, and Kennington Properties, Inc. ("Kennington") as to Count IV of the complaint, which complaint was filed on or about July 26, 1993. Count IV of the complaint seeks enforcement of a Wage Appeals Board ("WAB") decision upholding a finding that the defendants failed to pay prevailing wages, as mandated by the labor standards provisions of the Davis–Bacon Act, 40 U.S.C. §§ 276a *et seq.*, and other federal laws and regulations, in the amount of $631,040.03, relating to a federally funded project to restore the Sagamore Hotel, located in Lake George, New York.

The arguments of all parties have been set forth in excruciatingly verbose documents that the court must strain to refer to as "Briefs." The parties are admonished for the excessive length of the memoranda submitted to the court on this motion,[1] and strongly advised that any future submissions to this court must comply with Local Rule 7.1(c).

In brief, the plaintiff argues that (1) the administrative determination, that the defen-

U.S. Department of Justice, Federal Programs Branch, Civil Division, Washington, D.C., for plaintiff, Robert A. Van Kirk, Arthur R. Goldberg, of counsel.

---

1. Nearly 200 pages of legal memoranda, 1230 pages of the multi-volume administrative record, and attorneys' affidavits.

dants failed to pay prevailing wages as mandated by federal law, is final and no longer subject to challenge, because the defendants failed to appeal the WAB decision pursuant to 5 U.S.C. § 702; (2) the WAB decision should not be set aside, as it is not arbitrary or capricious; and (3) the defendants contractually agreed to abide by the prevailing wage laws and regulations of the Davis–Bacon Act.

The defendant Bolton Landing argues in opposition that (1) Bolton Landing is not bound by the decision of the WAB because Bolton Landing was not notified of the administrative proceedings prior to a June 14, 1990 decision; (2) the administrative decisions were arbitrary and capricious in that the decisions determining that the defendants were liable for wage shortfalls were based on insufficient factual evidence, and based on the "release" of the prime contractor from liability for the wage violations; and (3) the WAB lacks jurisdiction to impose a money penalty/damages against Bolton Landing, a municipality.

The remaining defendants argue in opposition to the plaintiff's motion for partial summary judgment that (1) the noncompliance issue, the alleged failure to pay prevailing wages, should not have been submitted to administrative determination by the Department of Labor ("DOL") or the WAB; (2) the WAB administrative determination is not entitled to *res judicata* effect; and (3) the determination by the WAB was arbitrary and capricious.

## B. UDAG Grant Project

On February 25, 1982, Bolton Landing, with the assistance of the defendant Wolgin and Uccellini Enterprises, Inc., a private consulting firm, submitted an application to the Department of Housing and Urban Development "HUD," seeking a federal Urban Development Action Grant ("UDAG") in the amount of $315,000.00 as part of an over $18 million project to acquire and renovate the Sagamore Hotel. Norman Wolgin had initiated the Town's involvement in the project, had hired Uccellini, and had remained closely involved.

In June of 1982, Bolton Landing authorized an amendment to the application for federal funds to seek approximately $3.5 million. In February 1983, Bolton Landing submitted another UDAG application to HUD seeking over $6.5 million as part of a $30 million project.

The UDAG application called for Bolton Landing to loan the funds to GIA, at a favorable interest rate.[2] GIA was to repay the loan over ten years, in accordance with the terms set forth.[3] The application also stated, in essence, that the project could not be performed without federal assistance.[4] Finally, the application set forth a number of assurances as mandated by 24 C.F.R. § 570.458. One subsection of 24 C.F.R. § 570.458, as incorporated into the application, states that the application must state that the applicant will "comply with ... [t]he labor standards requirements as set forth in [24 C.F.R. § 570.603][5] and HUD regulations issued to implement such requirements:"

On May 4, 1983, HUD preliminarily approved the UDAG application, and authorized **UDAG** funds in the amount of $5,275,000. The grant agreement, which incorporated the grant application,[6] was forwarded to Bolton Landing on July 19, 1983. The grant agreement was signed by Frank Leonbruno, on behalf of Bolton Landing on November 18, 1983.

On May 6, 1983, the defendant Norman Wolgin had closed on the purchase of the Sagamore Hotel.

---

2. The loan rate was set at 6%. At that time, the prime lending rate was nearly 11%.

3. Interest free for two years, and a balloon payment in the final year.

4. In compliance with the dictates of 42 U.S.C. § 5318(j).

5. Mandates payment of prevailing wages as determined in accordance with the Davis–Bacon Act, as amended, 40 U.S.C. § 276a—276a–5.

6. *"Section 1.01 Contents of Agreement*
   This agreement shall consist of this Grant Agreement and the Application, as may, from time to time, be amended." UDAG Grant Agreement, Art. I, General Provisions, § 1.01.

## C. Wage Determination And Dispute

Uccellini, pursuant to its contract with Bolton Landing, requested a Davis–Bacon wage determination for the UDAG project from HUD on December 12, 1983. HUD then requested the wage determination from the Department of Labor on December 27, 1983. The requests indicated that construction would commence on the project on March 1, 1984. On February 10, 1984, the Labor Department issued Wage Determination 84–NY–8. On February 13, 1984, HUD forwarded the wage determination to Uccellini. On February 22, 1984, Uccellini objected to the Labor Department wage rates. The defendants initiated an administrative appeal process sometime after the wage determination was handed down.

On February 28, 1984, Bolton Landing, GIA, and an investment group headed by the defendant Norman Wolgin executed a loan agreement, dated December 1, 1983. The loan agreement provided that Bolton Landing would loan $5,000,000 to GIA. By accepting those funds, GIA, the borrower, "assure[d] the Lender" that GIA would perform its obligations "according to the terms of [the] Loan Agreement and the Grant Agreement between the Secretary [of HUD] and the Lender." On that same day, Bolton Landing entered into a financing agreement with the Bank of New York to loan monies to GIA for the project. The first UDAG funds were disbursed on May 14, 1984.

On September 25, 1985, the Department of Labor issued a second wage determination, 85–NY–0324, covering the more expansive time period. Sometime in December of 1985, GIA sought reconsideration of 85–NY–0324 by the area administrator, Wage and Hour Division of the Dept. of Labor. On August 1, 1986, GIA received a denial of reconsideration, and GIA reinstated its petition before the Wage Appeals Board.

Sometime in the summer of 1984, the New York regional Wage and Hour office began an investigation of the project, and determined that the required Davis–Bacon prevailing wages and overtime were not being paid. The Department of Labor and HUD called for Bolton Landing to withhold approximately $490,000 in project funds from GIA, to ensure that any back wage obligation would be satisfied. Such action apparently would have thrown the project into default just two months before completion. In an effort to avoid default and the corresponding job loss to the Bolton Landing area, the defendant Norman Wolgin assured HUD, in a letter dated April 18, 1985, that "if any employee is entitled to further compensation, I would honor the obligation." The defendant Norman Wolgin also indicated in the letter that such assurance had been expressed by him to the Department of Labor. On April 26, 1985, HUD advised Bolton Landing to release the funds. The Department of Labor objected to such release by Bolton Landing without Bolton Landing securing some form of financial security or an agreement to be indemnified for any potential liability arising from the alleged wage violations. In response, on May 9, 1985, Bolton Landing entered into an Indemnity agreement with GIA pursuant to which GIA agreed to defend, indemnify and hold Bolton Landing harmless with respect to any claims or liabilities incurred by Bolton Landing under, *inter alia,* the Davis–Bacon Act.

On November 4, 1985, the Department of Labor requested additional payroll information from GIA, as part of its continuing investigation into alleged wage improprieties. The defendant Wolgin requested a meeting with Department of Labor officials; and such meeting took place on December 2, 1985. At that meeting, Davis–Bacon Act compliance was discussed, and the defendant Norman Wolgin stated his awareness that the Davis–Bacon Act applied to the project.

## D. Administrative Proceedings

On April 13, 1984, GIA formally requested reconsideration of the wage rates by an administrator of the Wage and Hour Division of the Department of Labor. Essentially, GIA contended, not that prevailing wages did not apply to the project, but that the rates set forth did not reflect rates for the community surrounding Bolton Landing. The administrator reaffirmed the rates by letter dated January 29, 1985. On March 15, 1985, GIA appealed this decision to the Wage Appeals Board.

Prior to the Wage Appeals Board's determination of the appeal, the Wage and Hour Division adjusted the rates applicable to the project downward by approximately 10%. Such action was taken after the Wage and Hour Division determined that construction on the project had actually begun in or around July 1983, rather than the spring of 1984, as had been the assumption for the initial prevailing wage rate determination. Accordingly, the Board dismissed GIA's petition for review, and granted leave to reinstate the petition after consideration of the new rates.

After the submission of briefs, the Wage Appeals Board held a hearing on May 19, 1987. Post hearing briefs were submitted, and on August 7, 1987, the Wage Appeals Board issued a decision, affirming the wage rate determinations. However, the Wage Appeals Board also remanded the matter to the administrator to determine (1) the applicability of 29 C.F.R. § 1.6(g); and (2) whether the developer had knowledge that Davis–Bacon labor standards applied to the project before the conclusions of contract negotiations and the start of construction. The administrator determined that negotiations had concluded after the effective date of the regulation, June 28, 1983, and that the parties had contractually agreed to comply with the prevailing wage requirements as set forth in the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301–5320, which requires compliance with the Davis–Bacon Act. This determination was appealed to the Wage Appeals Board ("WAB").

The WAB affirmed the administrator's determination in a decision dated April 28, 1992. The WAB held that negotiations had concluded after the effective date of the regulation, and that even if negotiations had not concluded prior to the effective date of the regulation, the parties to the grant agreement had expressly contracted to pay Davis–Bacon Act prevailing wages. No appeal of the WAB decision was taken.

On January 22, 1993, the Wage and Hour Division notified Bolton Landing and GIA that the Board's decision had become final, and that back wages in the amount of $631,-

040.03 were due the affected employees on the project.

The court now turns to a determination of whether the plaintiff is entitled to partial summary judgment as to Count IV of the complaint seeking enforcement of the WAB determination that Bolton Landing and GIA are liable for back wages in the amount set forth above.

## II.  DISCUSSION

### A.  Standard For Summary Judgment

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 516 (2d Cir.1994) (*quoting*, 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil s 2721 at 40 (2d ed.1983)). However, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it may not properly grant summary judgment where the issue turns on the credibility of witnesses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Azrielli*, 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *Id.; See, e.g.,* Fed.R.Civ.P.

56(e), 1963 Advisory Committee Note; *Agosto v. Immigration & Naturalization Service*, 436 U.S. 748, 756, 98 S.Ct. 2081, 2086–87, 56 L.Ed.2d 677 (1978); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Centronics Financial Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir.1978); 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed.1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. *Res Judicata* And Administrative Proceedings

■ "When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (*citing, Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; *Hanover Bank v. United States*, 285 F.2d 455 (1961); *Fairmont Aluminum Co. v. Commissioner of Internal Revenue*, 222 F.2d 622 (4th Cir.1955); *Seatrain Lines, Inc. v. Pennsylvania R. Co.*, 207 F.2d 255 (3d Cir.1953); *see also, Goldstein v. Doft*, 236 F.Supp. 730, *aff'd*, 353 F.2d 484 (2d Cir.1965), *cert. denied*, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966) (where collateral estoppel was applied to prevent relitigation of factual disputes resolved by an arbitrator)). The Second Circuit continues to adhere to the rule set forth in *Utah Construction. See Greenberg v. Brd. of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2d Cir.1992). This Circuit, however, has applied several factors for the court to consider in addition to the rule set forth in *Utah Construction*. A court

should not apply *res judicata* in a subsequent proceeding if the issue previously decided was one likely to be taken lightly by one or all of the parties, or if a party is not represented by counsel. *See Zanghi v. Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir.1985).

As an initial matter, the court finds that the issues decided by the WAB involved the imposition of liability for over $600,000 in back wages. This issue is not one that the court can say would be taken lightly by Bolton Landing or GIA. Moreover, there is no question that each party has been represented by counsel, whom the court presumes to be competent. Thus, no factor set forth in *Zanghi* prevents the application of *res judicata*. The court now considers whether the issues of fact determined by the WAB were properly before it, and whether the parties had an adequate opportunity to litigate those issues.

### 1. The issues decided were properly before the WAB.

■ The administrator of the Wage and Hour Division of the Department of Labor is given the authority to make wage determinations, or set up a program for such determination, relating to Davis–Bacon covered projects. See 29 C.F.R. §§ 1.1–1.3. "Any interested person may seek reconsideration of a wage determination" issued by the administrator. 29 C.F.R. § 1.8. After a denial of reconsideration, "[a]ny interested person may appeal to the Wage Appeals Board for a review of a wage determination or its application." 29 C.F.R. § 1.9. "The [Wage Appeals] Board has jurisdiction to hear and decide in its discretion appeals concerning questions of law and fact from final decisions" of the administrator, "... including decisions as to ... (1) Wage determinations issued under the Davis–Bacon Act ... [and] (3) controversies concerning the payment of prevailing wage rates or proper classifications which involve significant sums of money ..." [7] 29 C.F.R. § 7.1(b); *see also, Vulcan Arbor Hill Corp. v. Pierce*, 1987 WL 10499, *1 (D.D.C.) ("The Board has jurisdiction to hear and resolve appeals from final decisions involving wage determinations as

---

**7.** The amount at issue is assumed to be significant within the meaning of the C.F.R.

well as other controversies relating to coverage ...").

"The [Wage Appeals] Board is an essentially appellate agency ... It may remand under appropriate instructions any case for the taking of additional evidence and the making of new or modified findings ..." 29 C.F.R. § 7.1(e). In addition, "[i]nterested persons other than the petitioner shall have a reasonable opportunity ... to submit to the [WAB] written data, views, or arguments relating to the petition." 29 C.F.R. § 7.7.

In the instant case, on December 12, 1983, Uccellini Enterprises, on behalf of Bolton Landing, made a request for a Davis–Bacon wage determination for the subject project. GIA challenged the wage determination on April 13, 1984. The wage rate challenge began a process that lead to a WAB decision dated August 7, 1987, that remanded the case to the administrator for further findings. The order to remand related to two factual issues: (1) whether the "negotiations between [Bolton Landing] and the developer were concluded prior to the effective date of the regulation," June 28, 1983.[8] *See* WAB Decision; Admin. Record at 511; and (2) whether the parties had "knowledge that Davis–Bacon labor standards applied to [the] project prior to the conclusion of negotiations and the start of construction." *Id.* at 512. In essence, the WAB needed the additional findings to enable it to determine if Davis–Bacon wage rates applied to the project at all, much less in the amount determined by the administrator. In a decision dated April 28, 1992, the WAB affirmed the administrator's wage determination, on the strength of the administrator's findings that: (1) negotiations between Bolton Landing and GIA were not concluded before June 28, 1983; and (2) that Bolton Landing and GIA contractually agreed that Davis–Bacon wage rates applied to the project. The defendants argue that the WAB exceeded the scope of its jurisdiction by deciding these factual issues. The defendants' primary contention is that the WAB may make determinations only as to prevailing wage rates. The court disagrees.

■ The court finds that the above-referenced factual issues decided by the WAB were questions of fact from final decisions of the administrator as to wage determinations issued under the Davis–Bacon Act, and controversies concerning the payment of prevailing wage rates or proper classifications which involve significant sums of money. *See* 29 C.F.R. § 7.1(b). The court also notes that although it should not adhere blindly to the determinations and interpretations made by agencies regarding their own regulations, such decisions are accorded substantial weight. *See Miree Construction Corp. v. Dole,* 930 F.2d 1536 (11th Cir.1991); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). Having considered the extensive administrative record submitted with this motion, and in accordance with the legal standards and relevant regulatory language set forth above, the court concludes that the issues decided by the WAB were properly before it, such that the application of the doctrine of *res judicata* is not precluded on that basis.

The issues decided by the administrator on remand from the WAB were necessary to the wage determination, because they were dispositive of whether the Davis–Bacon Act requirements applied to the project. To hold that the very agency that drafted, interprets, and applies the regulations at issue exceeds its authority when it determines if the regulations apply to a project that is clearly under its supervision, belies all reason.

**2. The parties had a full and fair opportunity to litigate the issues decided.**

The Second Circuit has recently set forth the standard as to whether one has had the

---

8. The regulation referred to is 29 C.F.R. § 1.6(g) which states, in relevant part:

If Federal funding or assistance under a statute requiring payment of wages determined in accordance with the Davis–Bacon Act is not approved prior to contract award (or the beginning of construction where there is no contract award), the agency shall request a wage determination prior to approval of such funds. Such a wage determination ... shall be incorporated in the contract specifications retroactively to that date ...

opportunity to litigate an issue before an agency. *See, generally, Metromedia Co. v. Fugazy,* 983 F.2d 350, 365–366 (2d Cir.1992) (discussed in the context of collateral estoppel, a sub-set of *res judicata*). The *Fugazy* court determined that issues determined at the agency level could be precluded in a subsequent court action if the party against whom the determination was being introduced had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits. *Id.* at 365 (*citing, Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Zdanok v. Glidden Co., Durkee Famous Foods Division,* 327 F.2d 944, 955 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4416, at 136–48 (1981); Restatement (Second) of Judgments § 27 (1982)). The *Fugazy* court then explained that "the issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding ... Further, even if the issues in the two proceedings are identical, a decision by an administrative agency cannot be the basis for collateral estoppel unless it was an adjudicative decision. An agency action granting or denying a privilege is not an adjudicative decision unless the agency has made its decision using procedures substantially similar to those employed by the courts." Id. (*citing, Delamater v. Schweiker,* 721 F.2d 50, 53 (2d Cir.1983) (*per curiam* )); *Associated Industries of New York State, Inc. v. United States Department of Labor,* 487 F.2d 342, 350 n. 10 (2d Cir.1973); 4 Davis, Administrative Law Treatise § 21:3 (2d ed.1983); Restatement (Second) of Judgments § 83, comment b (1982). Finally, the court held that "[t]he mere fact that the damages awarded to the plaintiff [had] not been yet calculated ... [did] not prevent use of a final ruling on liability." Id. at 365 (citations omitted). In the instant action, Bolton Landing and GIA appealed the June 11, 1990 administrative determination. Each

party, including the plaintiff herein, submitted extensive briefing and supporting papers before the WAB. Each party was given the opportunity to argue before the WAB. The administrative record created by this process is nearly 1500 pages in length. Although the parties did not call witnesses, the full participation of the parties, the briefing, the oral testimony, the submission of the affidavits, and the substantial documentary support upon which the determination largely rests demonstrate that the parties had an adequate opportunity to litigate the issues. Accordingly, the court may apply the doctrine of *res judicata* to preclude relitigation of the issues presented herein.

■ The court notes that res judicata is not an inflexible doctrine, and need not be applied by the court, even if the technical requirements of the doctrine have been met. *International Harvester Co. v. OSHA,* 628 F.2d 982, 986 (7th Cir.1980). Notwithstanding the foregoing analysis, the court need not decide the motion on the ground of the applicability of *res judicata.*

## C. Review Of Agency Determinations

■ "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The plaintiff argues that the defendants, in effect, are estopped from seeking review of the WAB decision because they did not seek review pursuant to 5 U.S.C. § 702 prior to the plaintiff's filing the present enforcement action. The plaintiff cites no authority for this proposition. Moreover, although unconventional, courts have permitted review of final agency determinations in postures other than that suggested by the plaintiff, i.e., aggrieved party filing action in federal court. *See Coleman v. United States,* 363 F.2d 190 (9th Cir.1966), *rev'd on other grounds,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). Accordingly, the court may review the agency determination in this case.

■ "The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbi-

trary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). The court, thus, reviews final agency determinations applying an arbitrary and capricious standard. *See County of Rockland v. U.S. Nuclear Regulatory Comm'n,* 709 F.2d 766, 776 (2d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983). The *Rockland* court stated that the "standard of review is 'narrow' ... and 'highly deferential.'" *Id.* (citations omitted). The court then set forth the standard of review, stating:

> The test here is primarily one of rationality. If the [agency] based its [decision] on substantial relevant evidence, fairly ascertained, and if it has made no clear error of judgment, this court is not authorized to overturn that [decision].

*Id.* Accordingly, the court must limit its review of the WAB's decision as set forth above. The court notes that its review is limited to the record developed in the administrative process. *See generally, Brown v. U.S. Dept. of Interior,* 679 F.2d 747 (8th Cir.1982). Moreover, the court may not weigh alternative views available under the facts, nor substitute its own judgment for that of the agency, unless there is no basis in fact for the agency's view. *See, e.g., Fischer & Porter Co. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1574 (Fed.Cir.1987); *Soler v. G. & U., Inc.,* 833 F.2d 1104 (2d Cir.1987).

The court finds that the decision of the WAB, as set forth above, concerned issues properly within its statutory authority. Moreover, the court finds that the WAB made a rational decision, fairly ascertained from the facts in the record. There has been no clear error of judgment. The main thrust of the defendants' arguments is that the WAB should not have applied the Davis–Bacon prevailing wage provisions to the project. The defendants' first contention is that 29 C.F.R. § 1.6 cannot apply to the project because of the date the negotiations were concluded. The defendants' second argument is that the defendants did not contractually agree to apply the Davis–Bacon wage provisions to the project. A rationally-based factual determination refuting either one of those arguments compels the court to uphold the determination or the WAB.

## D. The Bolton Landing And GIA Contracted To Comply With the Davis–Bacon Wage Requirements

Bolton Landing, with the assistance of the defendant Wolgin and Uccellini Enterprises, Inc., a private consulting firm, submitted an application to the Department of Housing and Urban Development "HUD," seeking a federal Urban Development Action Grant. That application was expressly incorporated into the UDAG Agreement in Article I § 1.01, which states, "[t]his agreement shall consist of this Grant Agreement and the Application as may, from time to time, be amended." The application set forth a number of assurances as mandated by 24 C.F.R. § 570.458. One subsection of that C.F.R. section, as set forth in the application, states that the application must state that the applicant will "comply with ... [t]he labor standards requirements as set forth in [24 C.F.R. § 570.603] and HUD regulations issued to implement such requirements:" C.F.R. § 570.603 mandates the payment of prevailing wages as determined in accordance with the Davis–Bacon Act, as amended. *See* 40 U.S.C. § 276a–276a–5. It is clear that the town of Bolton Landing contractually assumed an obligation to follow the Davis–Bacon wage rate requirements.

Notwithstanding the express language of the application and the UDAG agreement, Bolton Landing claims that it was ignorant of the terms of the contractual agreement it had entered into, and thus, cannot be held liable for its failure to comply with the prevailing wage rates. The court is not surprised that Bolton Landing has set forth no legal precedent in support of this argument, since it would be a radical shift in the course of contract law to permit parties to avoid their obligations to a contract by merely pleading ignorance of the terms, particularly in this case where the provision that the town allegedly had no knowledge of was the very first provision set forth in the agreement. *See Woodside Village v. Sec. of U.S. Dept. of Labor,* 611 F.2d 312, 315–16 (9th Cir.1980)

(contracting parties to federally-funded project held to compliance with contract term requiring payment of Davis–Bacon prevailing wages). As to the claim that Bolton Landing lacked knowledge that the Davis–Bacon requirements applied to the project, the record contains ample evidence to the contrary. First, the express terms of the two applications for funding and the final agreement require Davis–Bacon compliance. In addition, the defendant Wolgin and Bolton Landing officials met with officials from HUD on March 31, 1983 and discussed Davis–Bacon wage requirements. *See* December 11, 1985 letter from attorney Kafin to Dept. of Labor Area Director Weitman. Also, on February 22, 1984, Bolton Landing and GIA entered into a Loan Agreement which stated that Bolton Landing was loaning grant monies to GIA in accordance with the terms of the Grant Agreement. As set forth above, the Grant Agreement expressly incorporated the Davis–Bacon requirements.

■ "Nothing in the Davis–Bacon Act precludes the parties from contracting with reference to it, even if by proper interpretation its requirements may not have been applicable by force of law to the project in question." *Woodside Village v. Sec. of the U.S. Dept. of Labor,* 611 F.2d 312, 315 (9th Cir. 1980). It is clear from the foregoing that the Town and GIA knew of its obligations under the Davis–Bacon Act, and expressly contracted to accept responsibility for compliance.

Therefore, the court has determined that the express language of the applications for the UDAG grant monies, the Grant Agreement itself, and the loan agreement between Bolton Landing and GIA provide more than enough factual support for the conclusion that the defendants contractually agreed to apply the Davis–Bacon prevailing wage rates to the project. In addition, the Town's agent, Uccellini Enterprises applied for a prevailing wage rate determination. Finally, the defendant Wolgin, a principal of GIA met with HUD officials and discussed the prevailing wage issue. The WAB's factual determination that the defendants had agreed to apply the Davis–Bacon provisions was not arbitrary or capricious. Rather, the determi-

nation is wholly supported by the record. Accordingly, the court grants the plaintiff's motion for partial summary judgment as to the liability of the defendants for the payment of back wages.[9]

The court cannot determine the exact amount of back wages to award based on the record before it. Therefore, the court will order the plaintiff to submit papers setting forth an exact dollar amount and the basis for such amount, and will permit a submission from the defendants as a collective group. The papers may not exceed 10 pages in length, excluding exhibits. The court iterates that it will not accept separate submissions from each defendant.

## III. CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's motion for partial summary judgment, and orders the submission of papers to the court within thirty days setting forth the exact amount of back wages due and owing, in accordance with the courts directions stated above.

**IT IS SO ORDERED.**

---

**9.** It is not necessary for the court to determine when negotiations were concluded.