**Paul J. DELAMATER,
Plaintiff-Appellant,**

v.

**Richard SCHWEIKER, in his official capacity as Secretary of the United States Department of Health and Human Services, Defendant-Appellee.**

No. 1440, Docket 83–6029.

United States Court of Appeals,
Second Circuit.

Argued June 13, 1983.

Decided Oct. 25, 1983.

Gary J. Grayson, Walton, N.Y., for plaintiff-appellant.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Albany, N.Y., Nancy S. Jones, Asst. U.S. Atty., Syracuse, N.Y., for defendant-appellee.

Before FRIENDLY, KEARSE and CARDAMONE, Circuit Judges.

PER CURIAM:

The significant issue presented by this appeal is whether, in a proceeding to terminate social security disability benefits, the Secretary of Health and Human Services ("Secretary") may be bound by his prior administrative decision to award such benefits. Plaintiff Paul J. Delamater appeals from a judgment of the United States District Court for the Northern District of New York, Howard G. Munson, *Chief Judge,* dismissing his complaint for review of the Secretary's termination of Delamater's disability and disability insurance benefits under Title II of the Social Security Act, as amended (the "Act"), 42 U.S.C. §§ 401–433 (1976) (amended 1977–1983). The district court dismissed the complaint on the ground that there was substantial evidence to support the Secretary's finding that as of October 1979 Delamater was not disabled within the meaning of the Act. *See* 42 U.S.C. § 405(g) (Supp. V 1983); *Mathews v. Eldridge,* 424 U.S. 319, 339 n. 21, 96 S.Ct. 893, 905 n. 21, 47 L.Ed.2d 18 (1976); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Since we agree and conclude that such a finding was not barred by the Secretary's prior administrative determination to grant Delamater disability benefits as of October 1975, we affirm.

## I. BACKGROUND

On October 30, 1975, Delamater was injured in an automobile accident, suffering a fracture of the left femur, dislocation of the right wrist, fracture of the left ulna and radius, and posterior dislocation of the left hip. In March 1976 he applied to the Social Security Administration ("SSA") for disability benefits. His application was supported by two reports of his treating physician, Dr. Edward J. Carey, Jr., indicating that Delamater's left leg was able to bear his full weight with a slight limp, that his right wrist was recovering well, and that his left wrist suffered limitations in its dorsiflexion and grip abilities. The SSA initially denied his application. Delamater thereafter submitted a third report from Dr. Carey, dated April 27, 1976, that apparently caused the SSA to reconsider. In this report, Dr. Carey described Delamater's left wrist as healed with marked limitation of motion, thus precluding Delamater's use of this wrist for ordinary activities; described an x-ray showing a narrowing of the left hip joint and indicating necrosis of the cartilage, which required Delamater to use a cane or crutch during walking; noted the possibility that replacement of Delamater's hip might be required at some later date; and described Delamater's prospects for further recovery that would enable him to engage in "sustained gainful activities by October of 1976"[1] as "extremely guarded." After the submission of this report, the SSA granted Delamater benefits commencing as of October 30, 1975.

Following the grant of benefits, the SSA, through the Bureau of Disability Determinations of the State of New York ("Bureau"), undertook periodic reviews of Delamater's condition.[2] In July 1980, the SSA determined, and later affirmed upon reconsideration, that Delamater's eligibility for disability benefits had ceased as of October 1979. Delamater sought and obtained *de novo* review of his case before an administrative law judge ("ALJ").

A hearing was held in June 1981, at which Delamater was represented by coun

1. The Act defines "disability" to include the inability to engage in any substantial gainful activity by reason of a physical impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A) (1976).

2. The Secretary is required to review each claimant's case periodically in order to determine the claimant's "continuing eligibility." 42

U.S.C. § 421(h) (Supp. V 1981) (amended 1983). Under the regulations promulgated by the Secretary, disability benefits are terminated "if the medical or other evidence shows that [the claimant is] not disabled or if there is not enough evidence to support a finding that disability continues." 20 C.F.R. §§ 404.1590, 416.990 (1983).

sel. The ALJ considered medical reports filed by three physicians, two x-ray reports, testimony of Delamater regarding his work history and asserted disability, and testimony of a vocational expert regarding Delamater's employment-related skills and the availability of suitable jobs in the area in which Delamater resides. We summarize the evidence insofar as it relates to Delamater's condition after the beginning of October 1979.

A report by Dr. Carey of a July 24, 1980 examination stated that although Delamater was experiencing pain in his left hip, he was no longer awakened at night by pain. Delamater was able to walk short distances and sit for 15–20 minutes before the pain would require him to lie down. Abduction had improved since a 1977 examination to 20 degrees and flexion had improved to 70 degrees. Delamater walked with a marked limp and used a cane. A report by Dr. Carey of a May 19, 1981 examination stated that Delamater was occasionally awakened at night by pain in his hip and could walk perhaps 50 feet without difficulty. Though he had to change his sitting position every 10–15 minutes, there was no indication that the pain required him to lie down. Despite the development of 5 degrees abduction, flexion had decreased to 40 degrees and abduction to 15 degrees.

Dr. Alexander E. Messer had examined Delamater in 1977 and 1979 at the request of the Bureau. Dr. Messer's report of an examination on October 25, 1979, stated that "[e]xamination reveals a 49 year old male in no apparent distress." He stated that Delamater no longer had a serious problem with his left wrist. Placing his full weight on his left leg, however, continued to cause pain. His left quadriceps remained weakened and slightly atrophied. Flexion was 30 degrees; abduction was 30 degrees. Dr. Messer concluded that Delamater was "definitely totally disabled." He stated the same conclusion in a report of a May 22, 1981 examination.

Dr. Freeman Burton Webber, who examined Delamater on May 8, 1980, at the request of the SSA, also submitted a report. His report noted that Delamater's right wrist showed some enlargement and limitation upon movement, but that flexion, extension, abduction, and adduction of the wrist were without significant pain. He concluded that Delamater's left wrist also had substantially recovered. Dr. Webber found that Delamater's stance was nearly normal and that he could walk with a limp, but that his left hip was not fully extended in walking. Flexion was limited to 25 degrees during walking; the left hip could be flexed passively to 80 degrees. Internal and external rotation were each 5 degrees. Delamater did not complain of pain during the examination of his hip. Dr. Webber concluded that Delamater had the residual functioning capacity to sit for up to 4 hours, stand for up to 4 hours, walk for up to 2 hours, lift up to 50 pounds occasionally, lift 20 pounds frequently, bend and climb occasionally, and carry up to 20 pounds occasionally. Dr. Webber also noted that Delamater's hands could be used for grasping, pushing, pulling, and fine manipulations.

The ALJ also considered two x-ray reports compiled after the beginning of October 1979. A report dated October 24, 1979, indicated extensive degenerative changes, narrowing of the joint space, and extensive heterotopic bone formation of the left hip. This report concluded that there had been little change since a 1977 x-ray report. The second report, dated May 19, 1980, showed degenerative changes in the left hip that had advanced since the 1977 x-ray report.

Delamater testified before the ALJ that he walks 75 feet to and from his barn twice a day; that he makes his own breakfast and dresses himself; and that he assists in the daily care of his disabled wife, who also was injured in the 1975 car accident. He also testified that he is able to stand and walk for periods of up to two hours, drive an automobile for up to an hour, and carry up to 10 pounds occasionally. Although Delamater claimed to suffer from constant, sometimes severe, pain, he had taken no medication other than aspirin for pain in the five-and-one-half years since his acci-

dent. He visited his physician only once a year.

In a decision dated September 11, 1981, the ALJ concluded that Delamater's eligibility for disability benefits had ceased as of October 1979, finding that as of that date Delamater "had the functional capacity to engage in substantial gainful activity" and did not suffer "bodily pain of such severity and duration as to constitute disability ... or as to preclude him from performing sedentary work on a sustained basis ...." The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council.

Delamater then commenced the present action for judicial review of the Secretary's determination. The district court dismissed the action on the pleadings, adopting the recommendation of the United States Magistrate to whom the matter had been referred and who had concluded that the ALJ's decision was supported by substantial evidence. This appeal followed.

## II. DISCUSSION

Delamater seeks reversal of the Secretary's denial of benefits on the grounds that substantially the same medical evidence presented to the ALJ was available to the Secretary when he made his initial determination of disability and that therefore either (1) the Secretary was barred by the doctrine of administrative res judicata from making a finding different from his initial determination of disability, or (2) the Secretary failed to meet his burden of proving an improvement in Delamater's condition. We reject both contentions.

### A. *Administrative Res Judicata*

Delamater's claim that the Secretary's decision to terminate is barred by administrative res judicata must be rejected for the fundamental reason that the initial decision to award benefits was an adminis-

trative decision, whereas res judicata may be applied only to determinations made after an adjudication.

The concept of administrative res judicata was first given express sanction by the Supreme Court in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). There the Court observed that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 422, 86 S.Ct. at 1560 (citations omitted); *see* Restatement (Second) of Judgments § 83 (1982). The reason for applying res judicata to decisions of administrative agencies is "not only to 'enforce repose' but also to protect a successful party from being vexed with needlessly duplicitous proceedings. 2 Davis, Administrative Law Treatise § 18.12 (1958)." *Safir v. Gibson,* 432 F.2d 137, 143 (2d Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970).

The implication in these statements is that if the administrative proceeding has not been of an adjudicative nature, a decision arrived at by the administrative agency cannot have res judicata effect. Thus, in *Associated Industries of New York State, Inc. v. United States Department of Labor,* 487 F.2d 342 (2d Cir.1973), we stated that " '[o]nly what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata.' " *Id.* at 350 n. 10 (quoting Davis, *supra,* § 18.08 at 597). An action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts. Restatement, *supra,* § 83 comment *b.*[3] Use of such "adjudicative procedure

**3.** The Restatement describes the development of the doctrine of administrative res judicata as follows:

According legal finality to administrative adjudication recognizes the similarity between the adjudicative procedure of modern

administrative agencies and modern judicial procedure. That similarity did not always exist. In an earlier era, decisions of administrative agencies even with regard to claims of legal right usually were arrived at by what may be called executive procedure, that is,

... is necessary to yield an adjudication that is binding under the rules of res judicata." *Id.* at 270.

In its initial action on Delamater's application for disability benefits in 1976, the SSA denied his claim. This decision was an administrative one, which the SSA was free to reconsider and which it shortly did reconsider after Delamater submitted another report from his physician. Its new decision to grant benefits was, no less than its initial decision to deny, an administrative determination. There was no hearing, no testimony, no subpoenaed evidence, no argument, no opportunity to test any contention by confrontation.[4] The doctrine of administrative res judicata thus had no application to the SSA's 1976 action. The Secretary was free in 1980 to proceed to an adjudication of Delamater's entitlement to benefits.

**B.** *Secretary's Burden to Show Improvement*

■ Delamater also contends that he is entitled to the continuation of his benefits because the Secretary failed to carry his burden of showing an improvement in Delamater's condition. This contention need not detain us long. Even if we should assume, *arguendo,* that the Secretary has the burden in a termination case of producing substantial evidence of a change in the claimant's condition, *see, e.g., Cassiday v. Schweiker,* 663 F.2d 745, 749 (7th Cir.1981); *see also Schauer v. Schweiker,* 675 F.2d 55,

57–59 (2d Cir.1982) (discussing cases), and assuming, contrary to what seems to be the prevailing view, that the claimant has no further burden to prove the continued existence of a disability,[5] Delamater's claim must fail because there was substantial evidence to support the finding that Delamater was no longer disabled.

The evidence presented to the ALJ of Delamater's condition in and after 1979 showed a marked improvement over the condition described in connection with Dr. Carey's 1976 prognosis that Delamater would be unable to resume gainful employment before October 1976. Thus, the 1979 and 1980 examinations showed that both wrists had healed and were no longer causing him serious problems, and Dr. Webber concluded that Delamater could use his hands for grasping, pushing, pulling, and fine manipulations; Delamater's hip had sufficiently recovered that he was "in no apparent distress," and could sleep without waking in pain, could endure physical examinations without complaint of pain, and could stand and walk for substantial periods of time. Dr. Webber concluded that Delamater could sit or stand for up to 4 hours, walk for up to 2 hours, lift up to 50 pounds occasionally, lift and carry 20 pounds frequently, and bend and climb occasionally.

We conclude that there was substantial evidence to support the Secretary's finding that Delamater's condition had improved

---

unilateral decision by an official on the basis of whatever information he deemed it appropriate to take into account. Parties did not have a right to present evidence or argument, and sometimes had no rights of participation at all. Since administrative agency procedure was usually of this character, it was generally held that an administrative determination could not finally resolve legal rights. It followed that an administrative determination could not have res judicata effects on legal rights or on disputed issues upon which such rights might depend.
Restatement, *supra,* § 83, at 269.

**4.** The great majority of the disability insurance claims received by the SSA are, of necessity, determined administratively. During fiscal year 1981, for example, approximately 2.3 mil-

lion claims for disability benefits were filed. Department of Health and Human Services, *Social Security Annual Report to the Congress for Fiscal Year 1981,* at 32, 35 (1982). Hearings were held before some 696 ALJs on about 215,250 of these claims. *Id.* at 38–39.

**5.** *See, e.g., Mathews v. Eldridge, supra,* 424 U.S. at 336, 96 S.Ct. at 903 (claimant has burden of showing entitlement to a continuation of benefits); *Iida v. Heckler,* 705 F.2d 363, 365 (9th Cir.1983) (same); *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982) (same); *Torres v. Schweiker,* 682 F.2d 109, 111 (3d Cir.1982) (same), *cert. denied,* —— U.S. ——, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983); *Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir.1981) (per curiam) (same); *Myers v. Richardson,* 471 F.2d 1265, 1268 (6th Cir.1972) (same).

and that as of October 1979 he was not disabled within the meaning of the Act.

## CONCLUSION

The judgment of the district court is affirmed.