expect Defendants to abide by the laws in all of their future employment decisions.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for a New Trial or to Amend the Judgment (# 92) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Front Pay, Prejudgment Interest and Injunctive Relief (# 96) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to one year of front pay in the amount of $18,000.00

### AMENDED JUDGMENT

**IT IS HEREBY ORDERED** that the judgment entered on November 24, 1997 is **VACATED.**

**IT IS FURTHER ORDERED** that final judgment is entered in favor of Plaintiff on his claims of disability discrimination in the amount of $573,000.00.

**IT IS FINALLY ORDERED** that the time for filing motions for attorneys' fees and costs is **STAYED** until Monday, September 28, 1998. If the parties are unable to reach an agreement as to attorneys' fees and costs, the Court will entertain any appropriate motions at that time.

**Sue HOWARD, SSN: [488–48–5514], Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97–0812–CV–W–BC–SSA.**

United States District Court,
W.D. Missouri,
Western Division.

Aug. 10, 1998.

***ORDER GRANTING PLAINTIFF'S MO-
TION FOR SUMMARY JUDGMENT
AND REVERSING THE DECISION
OF THE COMMISSIONER OF SO-
CIAL SECURITY***

LARSEN, United States Magistrate Judge.

Plaintiff Sue Howard seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.*, from the period of January 21, 1991 (the onset date) through April 21, 1993 (the date her disability benefits began pursuant to a second application). Plaintiff argues that the Commissioner's decision not to reopen and revise the first denial is not supported by substantial evidence and that plaintiff's due process rights have been denied. I find that (1) ALJ Cohen did not implicitly reopen the first application; (2) ALJ Mansfield's denial of plaintiff's request for a hearing does not amount to administrative res judicata; (3) plaintiff was denied due process since she was not given an opportunity to present her argument on why the request for hearing was timely and was not given an opportunity to present evidence on the issue of good cause; (4) plaintiff was denied due process since the SSA made a finding that her request for hearing was untimely which was contrary to the regulations and interpretations adopted by the SSA; and (5) because ALJ Cohen found plaintiff disabled as of the day after the denial on reconsideration of her first application (April 21, 1993) and the evidence in the record establishes that plaintiff's condition was substantially the same in 1991 as it was in 1993, remand is not warranted and plaintiff is entitled to an award of benefits covering the period January 21, 1991, to April 20, 1993. Therefore, plaintiff's motion for summary judgment will be granted and this case will be remanded for an award of benefits from January 21, 1991, through April 20, 1993.

## *I. BACKGROUND*

There are two applications for social security benefits involved in this case: (1) an

application for disability benefits and supplemental security income dated July 31, 1992 (hereinafter referred to as the first application) (Tr. at 77–80, 85–88), and (2) an application for disability benefits and supplemental security income dated January 4, 1994, (hereinafter referred to as the second application) filed after the first application was denied by the Appeals Council on December 10, 1993 (Tr. at 132–133, 134–137, 144–147). Plaintiff did not pursue an appeal to the district court following the denial of her first application, but instead filed the second application with the agency. The second application resulted in the award of benefits to plaintiff; however, the benefits were ordered paid from the day after plaintiff's first application was denied on reconsideration by the agency, that is, April 21, 1993.

The issue is whether plaintiff is entitled to recover benefits going back to the original date of disability onset, that is, January 21, 1991. Plaintiff argues that the agency's decision not to reopen and revise the denial of benefits from the first application is not supported by substantial evidence and should be reversed. Defendant argues that the agency's decision to deny reopening the first application was based on administrative res judicata and is not subject to review by the district court and that plaintiff has waived any alleged right to recover benefits for the period in question (January 21, 1991, to April 20, 1993) because she did not appeal the agency's denial of her first application to the district court but instead filed her second application with the agency. In reply, plaintiff argues that her constitutional rights under the due process clause have been violated by the agency's denial of these benefits.

## A. THE FIRST APPLICATION

Plaintiff filed her first application for disability insurance and supplemental income on July 31, 1992 (Tr. at 77–80, 85–88). In her application, plaintiff stated that she had been unable to work since January 21, 1991 (Tr. at 77). Prior to applying for social security benefits, plaintiff had been receiving other disability benefits which ended on June 30, 1992 (Tr. at 77).

On January 7, 1993, the agency denied plaintiff's application finding that she was not disabled (Tr. at 81–82). The agency listed plaintiff's primary diagnosis as osteoarthrosis and allied disorders, and her secondary diagnosis as sprains and strains (Tr. at 81). In the disability determination and transmittal form, the agency stated:

> The following reports were used in deciding your claim: Harry G. Miller, M.D., 3/9/92 and 3/16/92; [ex:B22] Bothwell Regional Health Center; [ex:21] 9/27/91–12/3/91; Golden Valley Memorial Hospital; [ex:25] 11/3/92–12/28/92; F. Wendell Pence, M.D., 9/9/92 [ex:23].[1]

> We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.

> You said you are disabled because of high blood pressure, rib and leg problems. The medical evidence shows that you are under treatment for these impairment(s) and that your activities are somewhat restricted by your condition.

> In spite of these restrictions the evidence shows that your are able to return to your past work as a Moulding Machine Operator.

(Tr. at 82).

In the Social Security Notice send to plaintiff on January 7, 1993, she was advised of the following concerning her right to appeal the denial of her disability benefits and supplemental income security payments:

### YOUR RIGHT TO APPEAL

If you think we are wrong, you can ask that the determination be looked at by a different person. This is called a reconsideration. IF YOU WANT A RECONSIDERATION, YOU MUST ASK FOR IT WITHIN 60 DAYS FROM THE DATE

---

1. The bracketed, italicized entries represent handwritten notations added (presumably sometime later) on the typed document.

YOU RECEIVE THIS NOTICE.[2] IF YOU WAIT MORE THAN 60 DAYS, YOU MUST GIVE U.S. A GOOD REASON FOR THE DELAY. Your request must be made in writing through any Social Security office. Be sure to tell us your name, Social Security number and why you think we are wrong. If you cannot write to us, call a Social Security office or come in and someone will help you. You can give us more facts to add to your file. However, if you do not have the evidence yet, you should not wait for it before asking for a reconsideration. You may send the evidence in later. We will then decide your case again. You will not meet with the person who will decide your case. Please read the enclosed leaflet for a full explanation of your right to appeal.

(Tr. at 83, 90).[3]

On March 9, 1993, plaintiff signed and submitted a request for reconsideration to the agency (Tr. at 93). Plaintiff's request for reconsideration was denied on April 20, 1993 (Tr. at 93, 99). In the disability determination rationale section, the agency indicated it had considered the following medical and vocational reports in denying plaintiff's request:

Dr. B. Townsend, records 10/28/92 to 1/05/93, *[ex:26]* Henry County Division of Family Services, record of 10/05/92 *[ex:24]*.[4]

Plaintiff and her then-attorney, Mr. Dan K. Purdy, were sent notices of the decision (Tr. at 97, 100). In the notice, the agency advised plaintiff and her attorney:

If you believe that the reconsideration determination is not correct, you may request a hearing before an administrative law judge of the Office of Hearings and Appeals. If you want a hearing, you must request it not later than 60 days from the date you receive this notice. You may make your request through any Social Security office. Read the enclosed leaflet and the reverse side of this notice for a full explanation of your right to appeal.[5]

### YOUR RIGHT TO APPEAL

If you still are not satisfied with the decision, you may request a hearing of this decision by the Office of Hearings and Appeals. YOU MUST REQUEST THE HEARING IN WRITING WITHIN 60 DAYS FROM THE DATE YOU RECEIVE THIS NOTICE. If you cannot send us a written request for a hearing within 60 days, be sure to contact us by phone. If you wait longer than 60 days, we will not conduct a hearing review of our decision unless you have a good reason for the delay.[6]

(Tr. at 100–101).

On June 24, 1993, plaintiff and her attorney signed a request for hearing by administrative law judge (Tr. at 103–104). The form instructs the claimant to "[t]ake or mail original and all copies to your local Social Security Office" (Tr. at 103). In the acknowledgment of request section of the form, an agency employee (Arlissa Johnson) noted that the request was received on June 28, 1993, and that the request was "timely filed" (Tr. at 103).

On July 6, 1993, someone wrote a memorandum to the file noting that the request for a hearing was dated June 28, 1993; the agency denied reconsideration on April 20, 1993; and therefore plaintiff's request was four days late; and that no "good cause" had been provided (Tr. at 105). The memorandum was initialed by ALJ Frank C. Mans-

---

**2.** I note here that there is no mention in this notice (or any other similar notice) of the requirement that the request be *received* by SSA within the 60–day time period. If the requirement is that the notice be received rather than that it be signed and mailed, SSA should so alert claimants.

**3.** There is no "enclosed leaflet" in the record here.

**4.** The bracketed, italicized entries are handwritten notations (presumably added later) on the typewritten document.

**5.** There is no "enclosed leaflet" in the record here.

**6.** The notice of reconsideration dealing with disability insurance benefits, which was also issued on April 20, 1993, and sent to plaintiff and counsel, is essentially the same as this notice (Tr. at 97).

field. The next day, an agency employee from the Office of Hearings and Appeals, L. Holloway, contacted Arlissa Johnson, the claims representative in Nevada, Missouri, to find out "why she marked the Request for Hearing as timely filed" (Tr. at 106). Ms. Johnson stated that "she considered the date claimant and her attorney signed the Request for Hearing which would be timely filed (6/24/93)" (Tr. at 106). On July 15, 1993, just eight days after the agency employee told the Office of Hearings and Appeals that she believed the request was timely, the ALJ dismissed plaintiff's appeal without affording plaintiff a hearing or any other opportunity to explain the alleged untimely request for a hearing (Tr. at 109–110). In that decision, the ALJ wrote:

A reconsideration determination letter was sent to the claimant on April 20, 1993. In that letter, the claimant was informed that if he [sic] disagrees with the determination, he [sic] must file a request for hearing within 60 days of the date of the Notice of Determination was received. As stated above, the date such notice was received is presumed to be five days after the date on the Notice, unless there is a reasonable showing to the contrary. The request for hearing was received 65 days after the claimant should have received his [sic] reconsideration determination. There has been absolutely no explanation from the claimant or his [sic] attorney as to why he [sic] was late filing.

Accordingly, there is no good cause to extend the time for filing. Therefore, the claimant's request for hearing is hereby dismissed. The reconsidered determination dated April 20, 1993, remains in effect.

(Tr. at 110).

Although the ALJ concluded that there was no explanation for the late filing, there is no indication in the record that the ALJ or anyone in the Office of Hearings and Appeals made any effort to contact plaintiff or her attorney to determine when she actually received the reconsideration determination letter or why plaintiff's request for a hearing was allegedly out of time. The only contact made by the Office of Hearings and Appeals was the call to Arlissa Johnson, the claims

representative in Nevada, Missouri, who had accepted plaintiff's request for a hearing as timely filed.

On September 14, 1993, the following three things occurred: plaintiff filed a request for review, she fired her attorney, and a claims representative took a statement from plaintiff and ultimately recommended that the decision be reversed.

In the request for review of hearing decision/order completed by plaintiff on September 14, 1993, she represented that:

My claim was dismissed by the ALJ because I was out of my appeal period. This was no fault of mine. I requested the necessary paperwork for a hearing from my attorney on the very day I received my reconsideration denial letter.

(Tr. at 111).

Plaintiff then dismissed Mr. Dan Purdy as her attorney and completed a statement to the agency on September 14, 1993, indicating that she had relied on her attorney, Mr. Purdy, to file her request for a hearing on time but received the paperwork in late June 1993. She indicated that she signed the forms and returned them to her attorney the same day (Tr. at 115–118).

Finally on September 14, 1993, Arlissa Johnson, the claims representative, contacted plaintiff about her request for an appeal (Tr. at 113). In that report of contact, Ms. Johnson, in part, wrote:

She states that she followed proper procedure by contact her attorney to request the forms for a hearing immediately after receiving her reconsideration denial letter.

After a significant time had passed Mrs. Howard finally received the forms late June 1993; after the 60 day deadline. She came into the FO [field office] herself to request the necessary paperwork for the appeals council because she didn't know if the attorney had filed for her. She has signed a statement request[ing] the removal of the attorney.

Based on what claimant related to me and the information in the file, I recommend that the hearing dismissal be overruled. It clearly seems to be the attorney's fault

in causing the case to be dismissed due to neglect.

(Tr. at 113–114).

On September 27, 1993, Gerald V. Liljedahl entered his appearance as the attorney representing plaintiff before the agency (Tr. at 129). That same day, Mr. Liljedahl requested a hearing to submit additional evidence (Tr. at 131).

On October 13, 1993, the Appeals Council, Office of Hearings and Appeals, vacated the ALJ's dismissal order and remanded the case "for further consideration of whether good cause exists for the claimant's untimely filing of the request for hearing" (Tr. at 119–120). The Appeals Council's order concluded with the sentence, "The Administrative Law Judge may take any further action needed to complete the administrative record." (Tr. at 121).

On October 28, 1993, the ALJ issued a notice of dismissal without taking "any further action needed to complete the administrative record" as suggested by the Appeals Council (Tr. at 122–126). In his order dismissing plaintiff's case, ALJ Frank Mansfield wrote, in part:

> The claimant was sent notice of the reconsidered determination in this case on April 20, 1993. She was informed at that time that any request for a hearing because of disagreement with the determination must be filed within 60 days of the date the notice of determination was received. The date such notice was received is presumed to be five (5) days after the date on the

notice, unless there is a reasonable showing to the contrary. . . .

> The regulations state that it is the responsibility of the claimant to file the request for hearing. *See* 20 CFR 404.929–930. The claimant has stated that she expected her attorney to file the request, and that it was his negligence which caused the untimely request. Even if an accurate statement of the facts, the claimant is not absolved of her responsibility to file timely.[7]

> Moreover, these facts do not establish "good cause" for the failure to timely file under 20 CFR 404.911, as at all times the claimant had the mental and physical ability to file, and was not prevented by circumstances beyond her control from filing.[8]

(Tr. at 125–126).

There is nothing in the record indicating that plaintiff was given a hearing or any other opportunity to present evidence on the issue of timeliness of her request for an administrative hearing; that the plaintiff's new attorney, Mr. Liljedahl, was given an opportunity to present the new evidence referred to in the September 27, 1993, request; or that the Office of Hearings and Appeals contacted Mr. Purdy to determine his recollection of the facts surrounding the filing of plaintiff's request for hearing. Furthermore, there is no indication in the record as to what evidence was relied upon by the ALJ in drawing his conclusions, although I believe it is safe to assume he had, at least, plaintiff's statement about the incident. Finally, there is no indication in the record as to what

---

**7.** The ALJ relies on 20 C.F.R. § 404.929–930 to support his statement that although a claimant hires an attorney to represent her, it is ultimately her responsibility to make sure filings are made timely. Neither 404.929 nor 404.930 provide support for such a statement. Section 404.929 states that claimants may request a hearing before an ALJ and that "if you waive your right to appear at the hearing," the ALJ will make the decision based on the file. Section 404.930 states that "you or another party may request a hearing" before an ALJ. It concludes with "we will hold a hearing only if you or another party to the hearing file a written request for a hearing." There is nothing in either of these regulations which states that despite having an attorney, a claimant is ultimately responsible for making sure filing deadlines are met.

**8.** It is noteworthy that on August 5, 1993, plaintiff was diagnosed by a psychiatrist as suffering from alcohol dependence, dysthymia, and depression; and on August 6, 1993, plaintiff was admitted to Nevada City Hospital where she remained for three days (Tr. at 371–372, 375). Plaintiff was treated at the hospital for alcohol detoxification (Tr. at 381, 382). Following her detoxification, plaintiff went to Nevada Mental Health Center for continued treatment of her alcohol problem (Tr. at 359, 381). Since all of this occurred prior to the ALJ's dismissal, it is safe to assume that had he given plaintiff an opportunity to present evidence of her mental and physical ability, this material would have been furnished.

evidence the ALJ relied upon in drawing his conclusions that plaintiff had the mental and physical ability to file or that plaintiff was not prevented by circumstances beyond her control from filing.

On December 2, 1993, Mr. Liljedahl requested a review by the Appeals Council of the ALJ's dismissal order (Tr. at 127–130). In his letter to the Appeals Council, Mr. Liljedahl represented, in part, the following:

> I am enclosing herewith a copy of the 1696 Appointment of Representative, that I filed with the Social Security Administration on September 27, 1993.
>
> I note that this had not been forwarded to the Administrative Law Judge before his action on October 28, 1993.
>
> On November 12, 1993, I filed a Request For A Hearing.[9] This was based on information related by the claimant. The reason I have become involved with this case is that I work closely with the Nevada Mental Health Center in Nevada, Missouri. The Case Control Officer of the Nevada Mental Health Center called me on September 16, 1993, stating that a client needed help pursuing her claim under Social Security and that the claimant was not well able [sic] to relate the status. The best that we could determine on that date was that the claimant was wanting a Reconsideration of the denial of her Social Security matter.
>
> It is obvious that this is a confused case. It is also submitted that Joeffrey Sue Howard is a seriously mentally ill person and may not be able to look after her own best interests. I urge the Appeals Council to honor the Request For Review and remand the case to an Administrative Law Judge with orders that a hearing *shall* be held and that the Appeals Council has overridden his second dismissal.

(Tr. at 129) (emphasis in original).

In an undated letter, the Appeals Council notified plaintiff of the following concerning the dismissal of her case:

The Appeals Council has concluded that there is no basis under the above regulations [20 CFR 404.970, and 416.1470] for granting the request for review of the dismissal of the request for hearing. In reaching this conclusion, the Appeals Council carefully considered each of the contentions raised by your attorney in the request for review dated December 2, 1993....

> The Administrative Law Judge found that the reason provided does not establish good cause for the untimely filing of the hearing request. Further, it was determined that there is no evidence that you lacked the mental and/or physical capacity to understand the procedures for requesting further appeal.[10]

(Tr. at 132–133).

The Appeals Council did not provide plaintiff with a discussion or an analysis of how it concluded she had possessed the mental and physical capacity to understand the administrative process despite counsel's December 2, 1993, representation that plaintiff was in a mental hospital as early as September 16, 1993, and that a caseworker from that facility called Mr. Liljedahl because of these precise concerns. Nor did the Appeals Council discuss or analyze how the ALJ's decision was reasonable given the evidence here. It simply recounted that the ALJ had not found good cause for the failure to file a timely request for a hearing.

### B. THE SECOND APPLICATION

On January 4, 1994, plaintiff filed her second application for disability and supplemental security income (Tr. at 134–137, 144–147). In her application for disability insurance benefits, plaintiff represented that she had been unable to work because of her disabling condition since February 15, 1991 (Tr. at 134).

---

9. Although counsel's letter refers to a November 12, 1993, Request for a Hearing, I do not find the document in the record. There is, however, the September 27, 1993, Request for a Hearing which was completed the same day counsel entered his appearance in this case.

10. Again, it is noteworthy that the Appeals Council should conclude that there was no evidence of physical or mental impairment preventing plaintiff from filing a timely request for hearing in light of the medical records from Nevada Mental Health Services (Tr. at 371–372, 382–383).

On June 14, 1994, plaintiff's application was denied by the agency (Tr. at 138–143, 148–152). In the letter notifying plaintiff of the decision, the Regional Commissioner wrote:

> The following reports (s) [sic] were used in deciding your claim: Nevada Regional Medical Center, notes 9/7/87 through 2/2/94 [ex:B28] [ex:B27]; Nevada Mental Health Center, note 8/24/94; D. Mitchell, Ph.D., examination 5/3/94 [ex: B29]; R. Kemm, M.D., examination 5/3/94 [ex:B30] . . . .

> You said you were disabled because of heart problems, arthritis, breathing problems, diabetes, and numbness. The medical evidence shows that you are under treatment for these impairment(s) and that your activities are somewhat restricted by your condition.

> While your restrictions would keep you from returning to past work, there is still other work you can do. The medical evidence shows you can do work activity except that involving driving or operating machinery or being exposed to dangerous conditions.[11]

(Tr. at 139).

On July 1, 1994, plaintiff filed a request for reconsideration (Tr. at 153–154). Plaintiff was notified that her claims were disapproved on reconsideration by letters dated September 30, 1994, from the Regional Commissioner (Tr. at 156–160, 162–165).

On October 14, 1994, plaintiff signed a request for hearing by administrative law judge, which was received by the agency on October 19, 1994 (Tr. at 166–167).

On August 16, 1995, ALJ Frederick C. Cohen (not the same ALJ who handled plaintiff's first application) conducted a hearing (Tr. at 46–75). At that hearing, the ALJ received in evidence exhibits 1 through 19, which deal with plaintiff's first application, and B1 through B50, which deal with plaintiff's second application (Tr. at 77–133, 134–485). He also heard testimony from plaintiff and a vocational expert (Tr. at 46, 47–65, 65–71).

During the hearing, plaintiff's counsel asked her about the request for a hearing on her first application:

Q. Along through that same period of time you started going to Nevada Mental Health. Is that right?

A. Yes.

Q. Okay. At the time you started going to Nevada Mental Health, what brought you there?

A. Well, drinking for one thing, I had a lot of emotional problems.

Q. Okay. Could you concentrate or keep your mind on anything at that time?

A. No.

(Tr. at 51).

Q. Okay. At the time of the appeal, how were you dependent on him [Dan Purdy, plaintiff's former lawyer]?

A. For everything.

Q. Okay.

A. I just turned it over to him.

Q. Okay. Let's go—in August of '93 is the first time you saw Dr. Ward Lawson at Nevada, where [sic] you more confused then than now?

A. Yeah.

Q. Okay. Just give us kind of a thumbnail sketch about how your life was in order or disorder back in this 1993 time frame.

A. Well, I was sick, for one thing, in many ways. My blood pressure was outrageous, I was living in my car, had no money, I had lost everything.

(Tr. at 51–52).

Q. Okay. At the time you mentioned living in a car, did you have a permanent address, or was it somebody else's address, or how were you surviving then?

11. The bracketed, italicized entries are handwritten notations (presumably added later) on the typewritten document.

A. Well, I usually park it out by Phillip's 66 and sleep under the light.

(Tr. at 52).

Plaintiff testified that on July 31, 1992, when her first application was filed, she did not have a permanent address but used the address of a friend's mother (Tr. at 53). At the time, she was living in her car but would check for delivered mail about three times a week (Tr. at 53). Although she had hired Dan Purdy to represent her in the Social Security case, plaintiff fired him when he failed to request a hearing before an administrative law judge within the time limit (Tr. at 53).

Plaintiff testified that at the time she went to see Dr. Ward Lawson she was suffering from many emotional problems (Tr. at 53–54). At the time, she was suffering from emotional problems as a result of sexual abuse as a child (Tr. at 58). Plaintiff was also experiencing emotional difficulties as a result of spousal abuse, which had caused her to leave her home with the children and go to a shelter (Tr. at 58). She was drinking excessively and living out of her car (Tr. at 54). Although she did not contemplate suicide, plaintiff indicated that at that time she did not care whether she lived or died (Tr. at 54). Plaintiff testified that since attending Nevada Mental Health Center, she had been clean and sober and was, on the day of the hearing (August 16, 1994) celebrating one year of sobriety (Tr. at 55–57).

The ALJ then proceeded to question plaintiff about her treatment in August 1993 (Tr. at 63–64). Plaintiff testified that at Nevada Mental Health Center, she was treated by about six different professionals including a primary therapist, a psychologist, and a "CSW" [Clinical Social Worker] (Tr. at 65).

At the conclusion of the hearing, Mr. Liljedahl moved the ALJ to reopen the first application arguing as follows:

Dr. [Calabria][12] gave a GAF of 50 on that date, but the—Dr. Calabria's finding in August of 1993, "I do not think she will be able to acquire sobriety without being first treated on an in-patient basis, she'll be referred to in-patient treatment as withdraw symptoms may still appear in the next couple of days. The patient should be considered to be completely disabled and unable to work for at least a year for the severity of her chemical dependence, severe depression, and her many physical illnesses." Again, Dr. Calabria's finding on August 5, 1993, stated what he found currently, that date, a reasonable administrative assessment with the finding that existed prior [thereto] at a reasonable time and that would verify that the application filed July 28, 1992, the first application, was a valid application, should be reopened and revised. There is no explanation along too that the administrative file which started on July 28, '92, but there was a subsequent denial, two denials, there was a request for a hearing that was untimely, there is no indication in these files that the Social Security District Office helped Sue Howard in obtaining and developing her case. There is—I would say that this is a reflection on the quality of interviewing techniques rather than a lack on Sue's part. We have here a case of a person who has a very serious emotional illness, Dr. Calabria calls it severe depression, and Dr. Lawson, essentially, is saying the same thing. . . .

[W]hat I'm saying is, that besides evidence of current disability, as well as disability in '93, there is now material evidence that would show or that would—that is filed within two years for the SSI purposes and within four years for the DIB purposes, that the original denial should be reopened and revised. Even though that Sue Howard had an attorney at that time this newly submitted evidence would establish a severe mental restriction within the relevant time frames and within appropriate interpretation of the records that we have before us to entirely justify reopening or revocation of the original denials.

(Tr. at 72–74).

On August 29, 1995, the ALJ issued his decision finding plaintiff disabled since April

---

12. In this transcript, the doctor's name is spelled "Calabrias". I have corrected the spelling and for ease of reading will not bracket each correction. Dr. Calabria is the psychiatrist who diagnosed plaintiff on August 5, 1993, as suffering from alcohol dependence, dysthymia, and depression (Tr. at 371–372).

21, 1993 (Tr. at 21–29). In connection with the first application, the ALJ wrote:

> A hearing was held August 16, 1995. She [plaintiff] was present and testified. Michael Wiseman, a qualified vocational expert, was present and testified at the request of the undersigned. She was represented by an attorney, Gerald Liljedahl, who moved to set aside the dismissal order and to reopen the earlier denial determinations on her 1992 applications for benefits, averring it was the fault of the Social Security Administration, not the claimant, that she filed her request for hearing late. There is no factual basis for this specious argument. The attorney's motion is denied. The undersigned does not reopen the earlier denial determinations on the claimant's 1992 applications for Title II and Title XVI benefits.

(Tr. at 22–23).

On September 18, 1995, plaintiff sought review by the Appeals Council of the ALJ's decision (Tr. at 6–7). In a letter of the same date, plaintiff's counsel argued that the ALJ had abused his discretion by failing to reopen and revise the decision on plaintiff's first application (Tr. at 8).

On April 4, 1997, the Appeals Council denied plaintiff's request for review (Tr. at 4–5). In the letter notifying plaintiff of the decision, an appeals officer wrote:

> The Administrative Law Judge dismissed your request for hearing as it pertained to the period through April 20, 1993, because a previous determination on that date had become final. Pursuant to the regulatory provisions in 20 CFR 404.903 and 416.1403, you are not entitled to court review of the Administrative Law Judge's denial of your request for reopening of the prior determination for that period.

(Tr. at 4).

Plaintiff's case was filed in the United States District Court on June 4, 1997.

### III. STANDARD FOR JUDICIAL REVIEW

■ Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner under Title II. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir.1997); *Andler v. Chater*, 100 F.3d 1389, 1392 (8th Cir.1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987) (citing *Steadman v. Securities & Exchange Commission*, 450 U.S. 91, 99, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981)).

### IV. FINAL DECISION

■ First, defendant argues that the decision of ALJ Cohen not to reopen the first application (which was dismissed by ALJ Mansfield) is not a "final decision" reviewable by this court. Specifically, defendant states:

> An ALJ's denial of a request to reopen a claim is not a final decision of the Commissioner pursuant to 42 U.S.C. § 405(g), unless a claimant can show that in denying the claimant's request, the ALJ reopened the case on its merits.

In support, defendant cites *Slycord v. Chater*, 921 F.Supp. 631, 641 (N.D.Iowa 1996).

■ It is well settled that a district court has no jurisdiction to review the Commissioner's decision not to reopen a prior determination. *Califano v. Sanders*, 430 U.S. 99, 107–08, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). A narrow exception exists in cases when the Commissioner reconsiders the merits of an application previously denied. In those cases, the matter is considered reopened and subject to judicial review. *Jeli-*

*nek v. Heckler,* 764 F.2d 507, 508 (8th Cir. 1985). .

In *Jelinek v. Heckler,* the claimant filed a first application for disability benefits alleging disability as of May 3, 1977. That application was denied. He then filed a second application alleging disability beginning on May 16, 1977. That application was also denied. Finally, a third application was filed alleging the same disability date as was alleged in the first application—May 3, 1977. The third application was denied and, after a hearing, the ALJ found that there was no error in the denial of the second application and that the claimant had failed to present new and material evidence which would justify reopening his claim. The ALJ then, however, considered the issue of whether the claimant had been disabled since May 3, 1997, which was an implicit reopening of the case since "the ALJ proceeded to reconsider Jelinek's case on the merits immediately after concluding Jelinek's earlier application could not be reopened." *Id.* at 508.

In this case, plaintiff's first application alleged an onset date of January 21, 1991. Her second application alleged an onset date of February 15, 1991. ALJ Cohen stated in his opinion, "The undersigned does not reopen the earlier denial determinations on the claimant's 1992 applications for Title II and Title XVI benefits." He then specifically considered whether plaintiff had been disabled since April 21, 1993—the day after the reconsideration denial determinations on plaintiff's earlier application for benefits. Therefore, ALJ Cohen did not consider the merits of plaintiff's first application and did not implicitly reopen the first application.

■ Although ALJ Cohen did consider multiple exhibits which had been presented during the pendency of the first application and heard testimony which covered the period when the first application was pending, that alone does not connote an implicit reopening of the first case. The ALJ's use of evidence presented with a prior application in order to determine the claimant's medical history does not amount to a reopening of the first application. *Burks–Marshall v. Shalala,* 7 F.3d 1346, 1348 (8th Cir.1993) (the mere allowance of evidence from the earlier applications, without more, cannot be considered a reopening of the earlier case); *Robertson v. Sullivan,* 979 F.2d 623, 625 (8th Cir. 1992) (review of a claimant's medical history does not constitute reconsideration "on the merits" necessary to constitute a de facto reopening of the earlier application); *Underwood v. Bowen,* 807 F.2d 141, 143 (8th Cir. 1986).

Therefore defendant is correct in his assertion that the first case was not implicitly reopened.

## · V. DUE PROCESS

■ Although the general rule is that the district court cannot consider the refusal of the Commissioner to reopen an earlier case, if the court finds that a colorable constitutional claim has been made, the bar to judicial review of the Commissioner's reopening decision is lifted. *Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. 980; *Burks–Marshall v. Shalala,* 7 F.3d at 1349; *Robertson v. Sullivan,* 979 F.2d at 625. A due process claim, such as the one raised by plaintiff in this case, is a colorable constitutional claim. *See Dealy v. Heckler,* 616 F.Supp. 880, 883 (W.D.Mo.1984).

■ The requirement of procedural due process imposes constraints on governmental actions which deprive individuals of protected liberty and property interests within the meaning of the Fifth Amendment. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Courts have recognized that the interest of an individual in continued receipt of Social Security benefits is a statutorily-created property interest protected by the Fifth Amendment. *Id.* Social Security disability applicants possess a sufficient claim of entitlement to trigger a protected property interest. *Dealy v. Heckler,* 616 F.Supp. at 886. In this case, there is no question that plaintiff has a protected property interest in that she has already been found disabled and but for the alleged untimely request for an administrative hearing after the first denial, plaintiff would have received disability benefits dating back to her original onset date.

Once the court concludes that the due process clause applies to a particular interest at stake, the second step is to identify the procedures necessary to safeguard that interest. *Vruno v. Schwarzwalder,* 600 F.2d 124, 129 (8th Cir.1979). The extent to which procedural due process must be afforded is influenced by the extent the claimant may be "condemned to suffer grievous loss," and depends on whether the claimant's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Three factors are considered in determining governmental and private interests affected: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards; and (3) the government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. 893.

### A. EFFECT OF ALJ MANSFIELD'S DENIAL OF REQUEST FOR HEARING

The Commissioner argues that ALJ Mansfield's denial of plaintiff's request for a hearing amounts to administrative res judicata. I disagree.

The principal of res judicata applies to findings and decisions *on the merits* which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision. *Taylor v. Heckler,* 765 F.2d 872, 876 (9th Cir.1985); *Stuckey v. Weinberger,* 488 F.2d 904, 909–11 (9th Cir. 1973). In *Dealy v. Heckler,* 616 F.Supp. 880, 888 (W.D.Mo.1984), the court stated that:

If "an administrative proceeding has not been of an adjudicative nature, a decision arrived at by the administrative agency cannot have res judicata effect." *Delamater v. Schweiker,* [721 F.2d 50, 53 (2nd Cir.1983) ]. Only what is adjudicated can be res judicata, and administrative action other than adjudication cannot be res judi-

cata. *Associated Industries of New York State, Inc. v. United States Department of Labor,* 487 F.2d 342, 350 n. 10 (2nd Cir. 1973). "An action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Delamater,* supra, 721 F.2d at 53. Use of adjudicative procedure is necessary to produce an adjudication that is binding under the rules of res judicata; where there is no hearing, no testimony, no subpoenaed evidence, no argument, and no opportunity to test any contention by confrontation, the doctrine of administrative res judicata has no application. *Id.* at 53–54.

In dismissing plaintiff's request for a hearing, ALJ Mansfield wrote:

A reconsideration determination letter was sent to the claimant on April 20, 1993. In that letter, the claimant was informed that if he [sic] disagrees with the determination, he [sic] must file a request for hearing within 60 days of the date of the Notice of Determination was received. As stated above, the date such notice was received is presumed to be five days after the date on the Notice, unless there is a reasonable showing to the contrary. The request for hearing was received 65 days after the claimant should have received his [sic] reconsideration determination. There has been absolutely no explanation from the claimant or his [sic] attorney as to why he [sic] was late filing.

Accordingly, there is no good cause to extend the time for filing. Therefore, the claimant's request for hearing is hereby dismissed. The reconsidered determination dated April 20, 1993, remains in effect.

(Tr. at 110).

This denial of plaintiff's request for a hearing was not a finding or decision "on the merits" which became final "as a result of a claimant's failure to seek administrative review". This was a denial based on a technical "flaw." Therefore, this decision can have no res judicata affect.

In addition, it is important to point out that the reason neither claimant nor her attorney provided, along with the request for hearing, an explanation as to why the document was late was because they did not believe the document was late. That should have been quite evident to the ALJ inasmuch as Arlissa Johnson, an agency employee, marked the document as having been timely filed. ALJ Mansfield is the first person, according to this record, who suspected that this document was not timely filed.[13] Therefore, it was incumbent upon him to allow plaintiff an opportunity either to argue that issue or to provide an explanation for the late filing. For whatever reason, he chose not to. That brings us to the next issue, denial of procedural due process.

### B. DENIAL OF PROCEDURAL DUE PROCESS

■ As is set out in the above summary of the relevant documents, ALJ Mansfield was presented with a case where he believed the request for hearing was untimely but at least one other person (Arlissa Johnson, an agency employee) had expressed in writing her belief that the request was timely. Hence, before he put pen to paper in denying plaintiff's request for hearing, ALJ Mansfield should have been aware that there was an issue as to whether the request was timely. Although the employee of the Social Security Administration was given the opportunity to explain her position, i.e., that the request was timely, plaintiff was not. No one contacted plaintiff or her lawyer to give either of them an opportunity to provide "good cause", the absence of which was the basis for ALJ

Mansfield's denial of plaintiff's request for hearing.

On September 14, 1993, plaintiff filed a notice with the Social Security Administration that she had fired her attorney and also filed a request for review. That same day, Arlissa Johnson, the SSA employee who originally had marked plaintiff's request for hearing as timely, contacted plaintiff and learned that plaintiff had, immediately upon receiving her reconsideration denial letter, requested from her attorney the forms to request a hearing. Ms. Johnson also learned that plaintiff had signed the request for hearing and returned it to her lawyer the same day she received it which was in late June. Ms. Johnson wrote "[b]ased on what claimant related to me and the information in the file, I recommend that the hearing dismissal be overruled." (Tr. at 113–114). Apparently nothing happened after Ms. Johnson submitted her recommendation.

About two weeks later, Gerald Liljedahl entered his appearance and requested a hearing to submit additional evidence. The following month, the Appeals Council vacated ALJ Mansfield's dismissal order and remanded the case to him "for further consideration of whether good cause exists for the claimant's untimely filing of the request for hearing." (Tr. at 119–120). The Appeals Council directed ALJ Mansfield to "take any further action needed to complete the administrative record."

ALJ Mansfield's "further action" consisted of writing a second order denying the request for hearing. Once again, he failed to contact either plaintiff or her attorney (either one of them—Dan Purdy or Gerald Lilje-

---

**13.** The documents in this record cause me to wonder if ALJ Mansfield even saw the request for hearing filed by plaintiff. On July 6, 1993, a "memorandum for the file" was prepared (Tr. at 105). The information on that document consists of plaintiff's name—"Jeoffrey S. Howard", her social security number, and the following notation: "Request for hearing dated 6/28/93, Recon[sideration] denial dated 4/20/93, over 65 days 4." That notation, as well as plaintiff's name and social security number, are handwritten and the handwriting does not appear to match that of ALJ Mansfield. In addition, the form contains a typewritten heading "good cause" and the "no" option below that heading is checked. The reason this document leads me to believe ALJ Mans-

field saw nothing other than this memorandum is because (1) he referred to plaintiff as a male throughout his two-page order and the name on this memorandum appears to be that of a male because the middle name of "Sue" is not spelled out although it is spelled out on her request for hearing, (2) he refers to the request for hearing as having been filed on June 28, 1993, and makes no mention of the fact that the request for hearing was dated June 24, 1993; and this memorandum indicates that the request for hearing was "dated" 6/28/93; and (3) there is no mention in the order of the fact that an agency employee marked the request as timely filed, and that fact also does not appear on the memorandum.

dahl) to request an explanation as to why the request was filed late, or to present an argument showing how ALJ Mansfield's "timeliness" computation was incorrect.

Aside from failing to give plaintiff any notice or opportunity to be heard on the issues of timeliness or good cause, ALJ Mansfield made a finding that plaintiff had the mental and physical ability to file her request on time and that she was not prevented by circumstances beyond her control from filing her request on time. Nowhere in his opinion does ALJ Mansfield even hint at what evidence he considered in arriving at these conclusions. Mansfield's order was dated October 28, 1993. Less than three months before that, plaintiff had been diagnosed by a psychiatrist as suffering from alcohol dependence, dysthymia, and depression; was admitted to Nevada City Hospital for several days; and was then transferred to Nevada Mental Health Center. Although those events occurred in August and plaintiff's request for hearing was filed in June, it should have been obvious to the ALJ that there existed a possibility that in June plaintiff did not have the mental ability to file her request on time or that she was prevented by circumstances beyond her control from filing her request on time. At the very least, he should have received evidence on this issue before drafting his second opinion denying her request for hearing on the issue of disability.

Even assuming ALJ Mansfield somehow was unaware of these August medical records, he should have given plaintiff the opportunity to explain her untimely filing. That simple courtesy was extended to an SSA employee who considered the request timely. There is no reason whatsoever why plaintiff should not have been given the same opportunity, especially considering it was her case and her benefits which were affected by this ALJ's decision.

Finally, in denying plaintiff's request for review, the Appeals Council stated, "The Administrative Law Judge found that the reason provided does not establish good cause for the untimely filing of the hearing request.

Further, it was determined that there is no evidence that you lacked the mental and/or physical capacity to understand the procedures for requesting further appeal." Presumably the Appeals Council believed that ALJ Mansfield's "findings" on these two issues were based on factual material since it was the Appeals Council who had directed Mansfield to take further action to complete the administrative record. In reality, the only thing that had been done by the Social Security Administration since plaintiff first requested a hearing in June 1993 was a game of ping-pong between the ALJ and the Appeals Council during which denials of plaintiff's rights and requests were batted back and forth.

It was during the August 16, 1995,[14] hearing on plaintiff's second application for benefits that plaintiff was finally able to present testimony to an ALJ about not only her condition but what was going on in her life during the time she had relied on her former attorney to file her request for hearing on the first application. That testimony included the facts that plaintiff was treated at Nevada Mental Health Center, she was living in her car, she had no ability to concentrate or keep her mind on anything at that time, she had severe drinking problems, she had a history of suffering physical abuse, and she depended totally on her former attorney to handle her disability case. There is no doubt that all of this information would have been presented to ALJ Mansfield had he allowed plaintiff an opportunity to give evidence on "good cause" for her failure to file a timely request for hearing in the first case.

ALJ Cohen, who denied plaintiff's request to reopen the earlier denial determination, stated in his order that there was no evidence that it was the fault of the Social Security Administration that plaintiff filed her request for hearing late. However, he did not address the issues of whether there was good cause for the untimely filing or whether plaintiff was given an opportunity to present evidence of good cause.

14. This hearing occurred 26 months after plaintiff requested a hearing on her first application for benefits, the request that was ruled untimely by ALJ Mansfield.

As was discussed above, the extent to which procedural due process must be afforded is influenced by the extent she may be "condemned to suffer grievous loss," and depends on whether the claimant's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Following is a discussion of the three factors which must be considered in making this determination.

1. *Private interest.* The private interest is both significant and obvious. Plaintiff, who has paid into the Social Security program for years, was entitled to receive disability benefits dating back to her alleged onset date rather than the day after plaintiff's first application was denied on reconsideration by the agency. In addition, plaintiff's financial condition was such that she needed the disability benefits. *See Dealy v. Heckler,* 616 F.Supp. at 886. Plaintiff worked for minimum wage her entire life (Tr. at 186). She was surviving on $80 per month in general relief and $115 per month in food stamps (Tr. at 48).

2. *Risk of erroneous deprivation.* Clearly the risk of erroneous deprivation is high—in fact, it is certain. In this case, there is not just a mere possibility that plaintiff would be awarded disability benefits. She *was* awarded disability benefits. There is no doubt in my mind that ALJ Cohen would have found plaintiff disabled as of January 21, 1991, had he considered that time frame because the testimony presented at the hearing was that plaintiff's condition had actually improved during the year before the hearing and the evidence in this record establishes that plaintiff's condition was substantially similar in 1991 as it was in 1993.

3. *Government's interest.* There is no significant financial or administrative burden associated with the requirement that plaintiff be given an opportunity to be heard regarding her position on the timely filing of her request for a hearing or the issue of good cause. In fact, had that hearing been granted, it is virtually certain that plaintiff would have been found disabled and her case would have ended. Instead, the case (although made up of two different applications) has continued to expend the time and resources of the Social Security Administration to deny the hearing, to deny review of the decision denying the hearing, to deny a second application, to deny on reconsideration the second application, to hold an evidentiary hearing, to deny review of the decision not to reopen the first application, and to litigate the issue in federal court. On the contrary, the government's interest, including the "fiscal and administration burdens", would have been furthered had ALJ Mansfield allowed plaintiff an opportunity to explain her position on timeliness and on good cause.

As stated by the Supreme Court, the "right to be heard has little reality or worth unless one ... can choose for himself whether to appear or default, acquiesce or contest". *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In this case, because ALJ Mansfield did not give plaintiff an opportunity to present evidence on the issue of good cause for failing to file a timely request for a hearing, plaintiff was unable to choose for herself "whether to appear or default, acquiesce or contest." Based on all of the above, I find that plaintiff's interest in avoiding the loss suffered by Mansfield's denial of her request for a hearing and Cohen's refusal to reopen the first application not only outweighs the governmental interest in summary adjudication, but her position actually furthers the government's interest in summary adjudication. Therefore, I find that plaintiff's procedural due process rights were violated.

## C. COMPUTATION OF TIMELINESS

Finally, plaintiff argues that in reality, the original request for hearing signed on June 24, 1993, and received by SSA on June 28, 1993, was not "untimely" as ALJ Mansfield found. I agree.

Plaintiff's first application was denied on reconsideration on Tuesday, April 20, 1993. Plaintiff was notified that she had 60 days from the date of receipt to file a request for hearing. The standard practice of the SSA is to allow 5 days for mail time. Therefore, plaintiff actually had a total of 65 days from April 20, 1993, to file her request for hearing. The 65th day from April 20, 1993, was Thurs-

day, June 24, 1993—the day which plaintiff signed and dated the request.

20 C.F.R. § 404.614 states in pertinent part as follows:

(a) General rule. Except as otherwise provided in paragraph (b) of this section and in § 404.630 through 404.633 which relate to the filing date of an application, an application for benefits, or a written statement, request, or notice is filed on the day it is received by an SSA employee at one of our offices or by an SSA employee who is authorized to receive it at a place other than one of our offices.

(b) Other places and dates of filing. We will also accept as the date of filing—

* * * * * *

(2) The date an application for benefits or a written statement, request or notice is mailed to us by the U.S. mail, if using the date we receive it would result in the loss of rights. The date shown by a U.S. postmark will be used as the date of mailing. If the postmark is unreadable, or there is no postmark, we will consider other evidence of when you mailed it to us.

Despite this regulation, ALJ Mansfield did not consider the date the request for hearing was mailed. There is no evidence in the record of what day the request was postmarked (no doubt because nobody ever looked at it or considered it important enough to mention). Since the SSA allows 5 days for mail time when sending a notice to a claimant, it seems reasonable to me to use that same 5 day allowance for mail time when a claimant sends a request to SSA. In fact, the Hearings, Appeals, Litigation and Law Manual (HALLEX),[15] § I–2–050B states that if a request is mailed and using the date of receipt would result in the loss of the claimant's rights, SSA will accept the postmark on the envelope or, if the postmark is unreadable or absent, the request is considered timely filed if SSA receives it by the 70th day after the date on the notice. The 70–day time limit consists of 5 days to re-ceive the denial on reconsideration, 60 days to file a request for hearing, and 5 days for that request to reach SSA by mail.

Using that 70–day time limit, plaintiff's request for hearing needed to reach SSA no later than Tuesday, June 29, 1993. The request reached SSA on June 28, 1993—within the 70–day time limit established above.

Although the 70–day time limit outlined in HALLEX § I–2–050B is to be used in cases when (1) a request is mailed, (2) using the date of receipt would result in a loss of rights, and (3) there is no legible postmark, I see no reason not to apply this analysis in this case since SSA failed maintain the essential piece of evidence to prove that such an analysis is not warranted—the envelope. Therefore, because defendant was the only party in a position to present evidence of a postmark other than 5 days before SSA received the request for hearing, defendant has waived any argument that the 70–day time limit does not apply.

Based on the above, I find that defendant violated plaintiff's procedural due process rights by finding her request for hearing untimely contrary to the regulations and interpretations adopted by SSA.

## VI. CONCLUSIONS

Based on all of the above, I find that (1) ALJ Cohen did not implicitly reopen the first application, (2) ALJ Mansfield's denial of plaintiff's request for a hearing does not amount to administrative res judicata, (3) plaintiff was denied due process since she was not given an opportunity to present her argument on why the request for hearing was timely and was not given an opportunity to present evidence on the issue of good cause, and (4) plaintiff was denied due process since SSA made a finding that her request for hearing was untimely which was contrary to the regulations and interpretations adopted by SSA. Furthermore, I find that because ALJ Cohen found plaintiff disabled as of the day after the denial on reconsideration of her first application (April 21, 1993) and the evidence in the record estab-

---

**15.** HALLEX contains the Social Security Administration's interpretations of its regulations. *See* *Daley v. Apfel,* 1998 WL 111638, \*7 (N.D.Ill., March 6, 1998), and HALLEX § I–1–001.

lishes that plaintiff's condition was substantially the same in 1991 as it was in 1993, remand is not warranted and plaintiff is entitled to an award of benefits covering the period January 21, 1991, to April 20, 1993.

Accordingly, it is

ORDERED that plaintiff's motion for summary judgment is granted. It is further

ORDERED that the decision of the Commissioner not to reopen plaintiff's first application and to deny benefits from the period January 21, 1991, to April 20, 1993, is reversed. It is further

ORDERED that this case is remanded for an award of benefits covering the period January 21, 1991, to April 20, 1993. ·

Plaintiff is reminded that the time for filing an application for attorney's fees pursuant to the Equal Access to Justice Act begins 60 days after judgment is entered in conformity with Federal Rule of Civil Procedure 58. *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).